**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------- x

ROBERT A. MAHAFFY,                          :
                                            :
                          Plaintiff,        :        Case No. 09 Civ. 1593 (AKH)
                                            :
              v.                            :
                                            :
THE CITY OF NEW YORK; THE NEW YORK          :
CITY DEPARTMENT OF EDUCATION; BRONX         :
AEROSPACE ACADEMY HIGH SCHOOL; and          :
BARBARA KIRKWEG, in her official and individual :
capacities,                                 :
                                            :
                          Defendants.       :
------------------------------------------------------------------- x


# MEMORANDUM OF LAW IN OPPOSITION TO CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


THOMPSON WIGDOR & GILLY LLP

Scott B. Gilly
Gregory N. Filosa
85 Fifth Avenue, Fifth Floor
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Counsel for Plaintiff Robert Mahaffy*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

TABLE OF EXHIBITS ...................................................................................................... vi

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF MATERIALS FACTS ......................................................................... 2

ARGUMENT ...................................................................................................................... 3

   I.   CITY DEFENDANTS HAVE FAILED TO MEET THE STANDARD FOR
       SUMMARY JUDGMENT ......................................................................................... 3

  II.   CITY DEFENDANTS FAIL TO ADDRESS PLAINTIFF'S CLAIM OF
       RETALIATION FOR ENGAGING IN PROTECTED LABOR UNION
       ACTIVITY ................................................................................................................ 4

     A. THE FIRST AMENDMENT PROTECTS A PUBLIC EMPLOYEE'S RIGHT TO
        ASSOCIATE IN LABOR UNIONS .................................................................................. 4

     B. THE SECOND CIRCUIT'S DECISION IN *WEINTRAUB V. BOARD OF EDUCATION*
        DOES NOT APPLY TO PLAINTIFF'S PROTECTED LABOR UNION ACTIVITY
        CLAIM ...................................................................................................................... 6

     C. PLAINTIFF'S LABOR UNION ACTIVITY TOUCHES ON A MATTER OF PUBLIC
        CONCERN .................................................................................................................. 7

        1.  Union Membership, Standing Alone, Is Enough To Satisfy The
            Public Concern Of A First Amendment Retaliation Claim ..................... 8

        2.  Plaintiff's Conduct Also Satisfied The Public Concern Element ........... 9

     D. PLAINTIFF SUFFERED AN ADVERSE EMPLOYMENT ACTIONS AND THERE IS A
        CAUSAL CONNECTION BETWEEN PLAINTIFF'S PROTECTED LABOR UNION
        ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION ........................................... 10

 III.   CITY DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR
       ENGAGING IN SPEECH PROTECTED BY THE FIRST AMENDMENT ............... 13

     A. PLAINTIFF ENGAGED IN PROTECTED ACTIVITY BY REVIEWING AND
        ASSISTING IN THE DELIVERY OF THE MARCH 31, 2008 LETTER TO PARENTS ...... 14

        1.  Plaintiff Was Speaking As A Citizen In The March 30, 2008
            Letter to Parents ...................................................................................... 15

      2.   The Content Of The March 31, 2008 Letter Addresses A Matter Of Public Concern.................................................................................. 16

  B.  PLAINTIFF SUFFERED ADVERSE EMPLOYMENT ACTIONS AND THERE IS A CAUSAL CONNECTION BETWEEN PLAINTIFF'S PROTECTED SPEECH AND THE ADVERSE EMPLOYMENT ACTIONS ........................................................ 17

IV.  PLAINTIFF HAS ESTABLISHED A FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM ............................................................................. 19

  A.  PLAINTIFF WAS TREATED DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS.................................................................................... 19

  B.  THE SELECTIVE TREATMENT OF PLAINTIFF WAS BASED ON HIS EXERCISE OF CONSTITUTIONAL RIGHTS PROTECTED BY THE FIRST AMENDMENT ............... 22

  C.  CITY DEFENDANTS HAVE FAILED TO ARTICULATE ANY GROUNDS THAT ESTABLISH THAT THEY ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAUSE CLAIM .................................................... 22

V.  PLAINTIFF HAS ESTABLISHED MUNICIPAL LIABILITY UNDER *MONELL* ... 24

CONCLUSION..................................................................................................... 26

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Abel v. Morabito*,
No. 04 Civ. 7284, 2009 U.S. Dist. LEXIS 9631 (S.D.N.Y. Feb. 11, 2009) ...............23, 24

*African Trade & Information Center, Inc. v Abromaitis*,
294 F.3d 355 (2d Cir. 2002)..........................................................................................24

*Amnesty America v. Town of W. Hartford*,
361 F.3d 113 (2d Cir. 2004)..........................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................................3

*Anderson v. New York*,
614 F. Supp. 2d 404 (S.D.N.Y. 2009)...........................................................................12

*Bernheim v. Litt*,
79 F.3d 318 (2d Cir. 1996).................................................................................16, 17, 23

*Brady v. Town of Colchester*,
863 F.2d 205 (2d Cir. 1988)..........................................................................................24

*Castro v. County of Nassau*,
No. 08 Civ. 297, 2010 U.S. Dist. LEXIS 95064 (E.D.N.Y. Sept. 13, 2010) ....................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................3

*City of San Diego v. Roe*,
543 U.S. 77 (2004).........................................................................................................16

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988).......................................................................................................25

*Clue v. Johnson*,
179 F.3d 57 (2d Cir. 1999)..............................................................................................4

*Cobb v. Pozzi*,
363 F.3d 89 (2d Cir. 2003)..................................................................................5, 8, 24

*Connick v. Myers*,
461 U.S. 138 (1983)..............................................................................................9, 14, 16

*Conward v. Cambridge Sch. Committee*,
    171 F.3d 12 (1st Cir. 1999)........................................................................................20

*Danzer v. Norden System, Inc.*,
    151 F.3d 50 (2d Cir. 1998)..........................................................................................4

*Diesel v. Town of Lewisboro*,
    232 F.3d 92 (2d Cir. 2000)...................................................................................19, 22

*Dillon v. Morano*,
    497 F.3d 247 (2d Cir. 2007)........................................................................................4

*Donovan v. Inc. Village of Malverne*,
    547 F. Supp. 2d 210 (E.D.N.Y. 2008) ........................................................................8

*Engquist v. Oregon Department of Agriculture*,
    553 U.S. 591 (2008)..................................................................................................23

*Gallo v. Prudential Residential Services, Ltd. Pshp.*,
    22 F.3d 1219 (2d Cir. 1994)........................................................................................4

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)............................................................................................14, 15

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000)........................................................................................20

*Green v. City of New York*,
    No. 06 Civ. 1836, 2009 U.S. Dist. LEXIS 1836 (E.D.N.Y. Sept. 22, 2009)....................23

*Jasco Tools, Inc. v. Dana Corp.*,
    574 F.3d 129 (2d Cir. 2009)........................................................................................3

*Johnson v. Grimm*,
    342 F.3d 105 (2d Cir. 2003)........................................................................................9

*Kessler v. Westchester Cty. Department of Social Services*,
    461 F.3d 199 (2d Cir. 2006)........................................................................................3

*LeClair v. Saunders*,
    627 F.2d 606 (2d Cir. 1980)...................................................................................19, 22

*McDonald v. Bd. of Educ.*,
    No. 01 Civ. 1991, 2001 U.S. Dist. LEXIS 10325 (S.D.N.Y. July 25, 2001)....................5

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978)...............................................................................................24

*Morris v. Lindau,*
    196 F.3d 102 (2d Cir. 1999)...............................................................................11

*Osborne v. Fernandez,*
    No. 06 Civ. 4127, 2008 U.S. Dist. LEXIS 116797 (S.D.N.Y. July 16, 2008)..................23

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)...............................................................................................24

*Picking v. Board of Education,*
    391 U.S. 563 (1968)...............................................................................................5

*Reeves v. Johnson Controls World Services, Inc.,*
    140 F.3d 144 (2d Cir. 1998)...............................................................................4

*Scott v. Goodman,*
    961 F. Supp. 424 (E.D.N.Y. 1996) ..................................................................8, 9

*Shumway v. UPS,*
    118 F.3d 60 (2d Cir. 1997)...............................................................................20

*Smith v. Arkansas State Highway Employees,*
    441 U.S. 463 (1979)...............................................................................................5

*Sousa v. Roque,*
    578 F.3d 164 (2d Cir. 2009)...............................................................................9

*Tomassi v. Insignia Financial Group, Inc.,*
    478 F.3d 111 (2d Cir. 2007)...............................................................................3

*Weintraub v. Board of Education,*
    593 F.3d 196 (2d. Cir. 2010)...............................................................6, 7, 9. 15

*Zelnick v. Fashion Institute of Technology,*
    *464* F.3d *217 (2d Cir. 2006)* ..................................................................13

## MISCELLANEOUS AUTHORITIES

6 H.R., 50     .......................................................................................................11

Fed. R. Civ. P. 56(c) ..............................................................................................3

# TABLE OF EXHIBITS

Federal Complaint...........................................................................................................................1

City Defendants' Answer.............................................................................................................2

Defendant Kirkweg's Answer.....................................................................................................3

Excerpts from the deposition of Plaintiff Robert Mahaffy ........................................................4

Excerpts from the deposition of Defendant Barbara Kirkweg...................................................5

Excerpts from the deposition of MaryAnne Mandell ................................................................6

Excerpts from the deposition of Elena Papaliberios .................................................................7

Affidavit of William McCoy ......................................................................................................8

Affidavit of Greg Winn...............................................................................................................9

Salary History of Plaintiff Mahaffy .........................................................................................10

Transcript of Performance Rating Appeal Hearing ..................................................................11

Section 5 of the CBA .................................................................................................................12

Section 7 of the CBA .................................................................................................................13

Grievance Committee Decision .................................................................................................14

Report of the Committee Reviewing TSgt. Mahaffy's Unsatisfactory Rating..........................15

Plaintiff Mahaffy's 1999-2003 Air Force Performance Reviews .............................................16

8/25/10 Email from Defendant Kirkweg to Plaintiff Mahaffy ................................................17

9/11/07 Email from Defendant Kirkweg to Jo Alice Talley.....................................................18

11/22/07 Email from Defendant Kirkweg to Plaintiff Mahaffy ...............................................19

4/16/07 Resignation Letter of MSgt. Joseph Picone.................................................................20

4/16/07 Letter from Defendant Kirkweg to MSgt. Joseph Picone............................................21

4/16/07 Resignation Letter of TSgt. Bobby Williams ..............................................................22

4/16/07 Letter from Defendant Kirkweg to TSgt. Bobby Williams .........................................23

Plaintiff Mahaffy's Class Schedule for Week of 1/28/08.........................................................24

2/13/08 Email from Defendant Kirkweg to Jo Alice Talley.....................................................25

Observation Report conducted by MaryAnne Mandell.............................................................26

Plaintiff Mahaffy's Termination Letter ....................................................................................27

2/9/08 Complaint of Parent Coordinator Chandra Joseph ........................................................28

2/29/08 Complaint of Parent Coordinator Chandra Joseph ......................................................29

3/2/08 Email from MaryAnne Mandell to Defendant Kirkweg................................................30

3/19/08 Complaint of MaryAnne Mandell ...............................................................................31

3/24/08 Letter of Reprimand from MaryAnne Mandell to Plaintiff Mahaffy and Rebuttal ..........32

4/11/08 Letter of Reprimand from MaryAnne Mandell to Plaintiff Mahaffy and Rebuttal ..........33

4/14/08 Letter from MaryAnne Mandell to Plaintiff Mahaffy and Rebuttal ................................34

4/14/08 Letter from MaryAnne Mandell to Plaintiff Mahaffy and Rebuttal ................................35

4/6/08 Doctor's Note from Dr. Leslie Bennett .......................................................................36

Observation Report conducted by Michelle Penn ......................................................................37

3/30/08 Letter to Students' Parents ..........................................................................................38

4/8/08 Email from Timothy Opium to Sharon Berger ...............................................................39

4/9/08 Email from Timothy Opium to Brian Rosenbloom .........................................................40

4/22/08 Email from Elena Papaliberios to Brian Rosenbloom ...................................................41

4/28/08 Email from Elena Papaliberios .....................................................................................42

5/8/08 Email from Timothy Opium to Elena Papaliberios .........................................................43

5/12/08 Email from MaryAnne Mandell to Plaintiff Mahaffy ....................................................44

The Daily News Article "Air Force May Ground BX. HS" .........................................................45

Step 1 Grievance form filed by Plaintiff Mahaffy ......................................................................46

Plaintiff Mahaffy's Annual Performance Review for 2007-2008 ................................................47

11/30/08 Letter from Defendant Kirkweg to Michelle Penn ......................................................48

Chancellors Committee Report ..................................................................................................49

Letter from Santiago Taveras to Plaintiff Mahaffy, Defendant Kirkweg and E. Papaliberios ......50

Plaintiff Mahaffy's Interview Application by Capt. Michael Hill ................................................ 51

Letter from the Special Commissioner on Investigation ............................................................ 52

4/10/08 Letter from Col. Richard Ragaller to Elena Papaliberios ............................................... 53

4/24/06 Letter from Col. Norm Balchunas to Defendant Kirkweg ............................................. 54

5/12/08 Email from Defendant Kirkweg to Marge Feinberg ...................................................... 55

5/12/08 Email from MaryAnne Mandell to Plaintiff Mahaffy .................................................... 56

Confidential Portions of Defendant Kirkweg's Deposition ........................................................ 57

# PRELIMINARY STATEMENT

Plaintiff Robert Mahaffy ("Plaintiff" or "TSgt. Mahaffy") respectfully submits this memorandum of law in opposition to the motion for summary judgment filed by Defendants New York City ("Defendant City"), the New York City Department of Education ("DOE" or the "Department") and Bronx Aerospace Academy High School ("Bronx Aerospace" or the "School") (collectively, "City Defendants").[1] As set forth below, the record amply demonstrates the existence of genuine issues for trial on TSgt. Mahaffy's claims of retaliation for engaging in activity protected by the First Amendment and the Fourteenth Amendment to the United States Constitution, as well as the New York State Constitution, and City Defendants' motion should therefore be denied in its entirety.[2]

In moving for summary judgment, City Defendants repeatedly rely on their conclusory legal analysis with minimal references to the well-developed record. Such a conclusory analysis is inconsistent with the standard regarding summary judgment which requires that all facts be viewed in the light most favorable to Plaintiff as the non-moving party. As a result, City Defendants have simply failed to show that there is no genuine issue of material fact and, thus, their motion for summary judgment should be denied. Further, with respect to Plaintiff's first cause of action, City Defendants fail to address (or even recognize) that Plaintiff's claims relate to the First Amendment's freedom of association clause rather than the free speech clause. Instead, City Defendants apply an incorrect legal standard in seeking dismissal of Plaintiff's claim for retaliation for having engaged in protected labor union activity and Plaintiff is entitled

---

[1] Plaintiff does not oppose Defendant City's motion for summary judgment on the grounds that the City is not a proper party to this action. For ease of reference, however, Plaintiff will continue to refer to Defendants New York City Department of Education and Bronx Aerospace as "City Defendants."

[2] In her separate motion for summary judgment, Defendant Barbara Kirkweg ("Defendant Kirkweg") adopts the arguments raised by City Defendants in support of her own motion for summary judgment. For the reasons explained herein, Defendant Kirwkeg's motion for summary judgment on Counts I through IV of Plaintiff's Complaint should be denied as well.

to denial of this portion of City Defendants' motion on this ground alone.  Notwithstanding this

deficiency, City Defendants' motion is legally deficient as it is contrary to the case law which

establishes a claim for protected labor union activity and ignores numerous genuine issues of

material fact which exist which preclude summary judgment on this claim, as well as Plaintiff's

claims pursuant to the First Amendment's freedom of speech clause and the equal protection

clause of the Fourteenth Amendment.  Thus, for all those reasons outlined more fully below,

Plaintiff respectfully requests that the Court deny City Defendants' motion for summary

judgment.

## STATEMENT OF MATERIAL FACTS[3]

Plaintiff, a twenty year veteran of the United States Air Force, was employed as an

Aerospace Science instructor with Bronx Aerospace from February 2007 through May 2008.

(Plaintiff's 56.1 Counterstatement ("Pl. 56.1") ¶ 42).  During the course of the first year of his

employment, Plaintiff was repeatedly praised by Defendant Kirkweg, the Principal of Bronx

Aerospace, for the manner in which he performed his job.  (Plaintiff's Rule 56.1 Counter

Statement of Material Facts, hereinafter "Pl. 56.1," ¶¶ 75-79).  This abruptly changed, however,

in February 2008 when Plaintiff raised concerns about his work schedule – and the fact that it

exceeded the work schedule permitted by the collective bargaining agreement between the DOE

and the United Federation of Teachers ("UFT" or the "Union") – which led to a grievance filed

on Plaintiff's behalf.  (Pl. 56.1 ¶¶ 75-79).  Immediately after Defendant Kirkweg learned of

Plaintiff's labor union activity, she demoted him from his position as Senior Aerospace Science

Instructor ("SASI") with the School's Air Force Junior Reserve Officer Training Corps (

"JROTC").  (Pl. 56.1 ¶ 89-94).  Shortly thereafter, Plaintiff received a series of written

---

[3]         The Court is respectfully referred to the more detailed enumeration of relevant facts set forth in Plaintiff's
accompanying Statement of Material Facts pursuant to Local Rule 56.1.

complaints from various members of the administration which were ultimately relied upon by Defendant Kirkweg to terminate his employment with the School. (Pl. 56.1 ¶¶ 98-129). Following his termination, Defendant Kirkweg then issued Plaintiff an unsatisfactory performance rating for the 2007 – 2008 school year which rendered him ineligible to apply for other JROTC positions within the City of New York and the DOE. (Pl. 56.1 ¶¶ 168-169).

## ARGUMENT

### I.   CITY DEFENDANTS HAVE FAILED TO MEET THE STANDARD FOR SUMMARY JUDGMENT

Summary Judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, City Defendants bear the burden of making this showing, and the Court must view all facts in the light most favorable to TSgt. Mahaffy, resolving all ambiguities and drawing all inferences in his favor. *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Indeed, "at the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (internal citation omitted); *see also Jasco Tools, Inc. v. Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) (because "a jury is free to believe part and disbelieve part of any witness's testimony . . . the court considering a summary judgment motion 'must disregard all evidence favorable to the moving party that the jury is not required to believe.") (citations and internal quotations omitted).

The Second Circuit has noted additional considerations that should be taken into account when considering whether summary judgment is appropriate in employment cases where the

employer's intent is at issue. *See Gallo v. Prudential Residential Svcs. Ltd.*, 22 F.3d 219, 1224

(2d Cir. 1994) ("a trial court must be cautious about granting summary judgment to an employer

when, as here, its intent is at issue"). Since direct evidence of discriminatory or retaliatory intent

is rare in employment cases, careful scrutiny of affidavits and depositions is necessary to

determine whether circumstantial proof exists indicating such an intent. *Id.* Further, because

"the only direct evidence available very often centers on what the defendant allegedly did or said

… the issue frequently becomes one of assessing credibility of the parties." *Danzer v. Norden*

*Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) (citations omitted). When a material fact turns on the

credibility of a witness, a genuine issue of fact is raised and summary judgment is precluded.

*See Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007); *Reeves v. Johnson Controls World*

*Servs., Inc.*, 140 F.3d 144, 157 (2d Cir. 1998) ("questions of witness credibility are to be decided

by the jury").

## II.  CITY DEFENDANTS FAIL TO ADDRESS PLAINTIFF'S CLAIM OF RETALIATION FOR ENGAGING IN PROTECTED LABOR UNION ACTIVITY

In characterizing Plaintiff's first cause of action as a claim under First Amendment's free

speech provision rather than its freedom of association clause, City Defendants gloss over and

fail to address Plaintiff's first cause of action. While this alone would be grounds for the denial

of City Defendants' motion regarding Plaintiff's protected labor union activity claim, for the

reasons explained more fully below, even had City Defendants properly addressed this claim,

there are genuine issues of material fact which preclude summary judgment.

### A.  THE FIRST AMENDMENT PROTECTS A PUBLIC EMPLOYEE'S RIGHT TO ASSOCIATE IN LABOR UNIONS

It is well settled that the First Amendment protects the rights of public employees to

associate in labor unions and that a public employer may not retaliate against an individual

because of his union activities. *Clue v. Johnson*, 179 F.3d 57, 60 (2d Cir. 1999) ("There is no

doubt that retaliation against public employees solely for their union activities violates the First Amendment."); *see generally Cobb v. Pozzi*, 363 F.3d 89, 102-109 (2d Cir. 2003); *see also McDonald v. Bd. of Educ.*, No. 01 Civ. 1991 (NRB), 2001 U.S. Dist. LEXIS 10325, *26-27 (S.D.N.Y. July 25, 2001) (citations omitted). As the Supreme Court noted in *Smith v. Arkansas State Highway Employees*, 441 U.S. 463 (1979), "[t]he public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation in doing so." *Id.* at 465. Thus, there is no question that the First Amendment protects a public employee's right to engage in labor union activities and provides a cause of action when a public employer retaliates against him for engaging in such activity.

While there are a number of distinguishing characteristics between a claim of retaliation based on associational conduct and speech, both claims are subject to the legal framework initially laid out by the United States Supreme Court in *Picking v. Board of Education*, 391 U.S. 563 (1968). *See Cobb*, 363 F.3d at 105. Thus, in order to state a claim for retaliation in violation of the First Amendment's right to freedom of association, a plaintiff must demonstrate that (i) his associational activity touches on a matter of public concern, (ii) he suffered an adverse employment action, and (iii) a causal connection exists between the associational activity and the adverse employment action, so that it can be said that his associational conduct was a motivating factor in the determination. *Id.* at 102, 107.

While City Defendants incorrectly characterize Plaintiff's protected labor union activity claim as a protected speech claim, City Defendants' argument centers on the issue of whether Plaintiff's conduct touches on a matter of public concern. Thus, City Defendants' have not, and in light of the facts outlined at section II.D below they cannot, argue that Plaintiff has failed to demonstrate the second and third prongs of a prima facie case.

5

**B.** **THE SECOND CIRCUIT'S DECISION IN *WEINTRAUB V. BOARD OF EDUCATION* DOES NOT APPLY TO PLAINTIFF'S PROTECTED LABOR UNION ACTIVITY CLAIM**

As a result of City Defendants' failure to note the distinction between Plaintiff's claim of retaliation for engaging in protected labor union activity, City Defendants' reliance on the Second Circuit's recent decision in *Weintraub v. Board of Education*, 593 F.3d 196 (2d. Cir. 2010), is misplaced. (*See* City Def. Br. at 10-11). While the Second Circuit held in *Weintraub* that a public employee was not speaking as a citizen when he filed a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom (*see Weintraub*, 593 F.3d at 201), the Second Circuit's analysis was limited to freedom of speech retaliation claims and not the freedom of association or protected labor union activity claims asserted by Plaintiff here. In reaching the conclusion that it did, the Court in *Weintraub* determined that the plaintiff was not speaking as a citizen because "[t]he lodging of a union grievance is not a form or channel of discourse available to non-employee citizens" and instead "an internal communication pursuant to an existing dispute-resolution policy establish by his employer, the Board of Education." *Weintraub*, 593 F.3d 196.

*Weintraub* should not, however, be read so broadly as to apply the "citizen" requirement to protected labor union activity claims brought pursuant to the First Amendment's freedom of association clause, to hold otherwise would vitiate a public employee's ability to assert a claim of retaliation for having engaged in protected labor union activity which the Supreme Court has repeatedly recognized as a fundamental right. As an initial matter, the issue of protected labor union activity was not before the Court in *Weintraub* as the plaintiff in that case did not assert that he was retaliated against for engaging in protected labor union activity, but instead based his claims solely of the free speech provisions of the First Amendment, thus limiting *Weintraub's* usefulness in analyzing Plaintiff's protected labor union activity claim. Notwithstanding this

distinguishing characteristic, while the Second Circuit reasoned that the plaintiff's "grievance filing . . . lacked a relevant analogue to citizen speech and 'retain[ed no] possibility" of constitutional protection," (*Weintraub*, 593 F.3d at 204 (alteration in *Weintraub*) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)), this cannot apply to labor union activity because there can never be a "relevant analogue" to private citizen conduct because private citizens inherently have no access to such public employee labor unions. *See Justice v. Danberg*, 571 F. Supp.2d 602, 609 (D. Del. 2008). In *Justice*, defendants argued that *Garcetti* precluded a claim of retaliation for engaging in protected labor union activity because plaintiff was required to be a member of the union, his labor union activity was required by his duties as a public employee. *Id.* The court, however, rejected defendants' argument, noting that "if the court were to adopt defendants' interpretation of the rule, union activity would cease to be a fundamental right protected under the Constitution, a holding that would contradict decades of Supreme Court precedent." *Id.* Thus, the Court should not read *Weintraub* broadly and apply it in the context of a freedom of association claim, as this would completely eviscerate the protections of the First Amendment as it relates to a public employee's right to engage in protected labor union activity which, as noted above, is a right long recognized by the Second Circuit and the United States Supreme Court.

### C. PLAINTIFF'S LABOR UNION ACTIVITY TOUCHES ON A MATTER OF PUBLIC CONCERN

Despite City Defendant's attempts to characterize Plaintiff's complaints to the UFT as complaints about "personal workplace issues" (*see* City Def. Br. at 10), Plaintiff's labor union activity is constitutionally protected because it touches on a matter of public concern. As courts within the circuit have held, labor union membership itself is inherently a matter of public concern. Further, the testimony of Defendant Kirkweg establishes Plaintiff's labor union activity

was a matter of public concerns as it had a significant impact on the internal operations of the

School (and the education of the students attending the school) and required a complete overhaul

of the schedule of each student at the School which then led to complaints from students and

parents alike (*see* Pl. 56.1 ¶¶ 95-97, 143, 144a), which is sufficient to establish that such conduct

touches on a matter of public concern.

### 1. Union Membership, Standing Alone, Is Enough To Satisfy The Public Concern Element Of A First Amendment Retaliation Claim

While the Second Circuit has not addressed whether union membership alone touches on

a matter of public concern (*see Cobb*, 363 F.3d at 107), other district courts that have addressed

this question have answered in the affirmative. *See Donovan v. Inc. Vill. of Malverne*, 547 F.

Supp. 2d 210, 218 (E.D.N.Y. 2008); *Scott v. Goodman*, 961 F. Supp. 424, 435 (E.D.N.Y. 1996).

In *Donovan*, the plaintiff, who had served as both a union delegate and member of the executive

board of his labor union, was denied a promotion on three separate occasions under

circumstances that he asserted were, in part, based on his membership in his labor union.

*Donovan*, 547 F. Supp. 2d at 213-14. In addressing the threshold inquiry of whether plaintiff

demonstrated that his conduct satisfied the public concern element, the court found that

"plaintiff's union membership, in and of itself, is enough to satisfy the public concern element."

*Id.* at 218. Accordingly, the court denied defendants' motion for summary judgment. *Id.* at 219.

Similarly, in *Scott*, the court conducted the public concern analysis and concluded that

union membership, "in and of itself satisfies the public concern requirement." *Scott*, 961 F.

Supp. at 435. In reaching this conclusion, the court noted that "the core purpose of a labor union

is to address, criticize, and attempt to improve the way an employer operates both in general and

in relation to its employees. The role of a union is particularly important, where as here, the

employer is a governmental entity." *Id.* Thus, the court found, "under the *Pickering/Connick*

analysis, union activity *in toto* is certainly broader than 'matters of only personal interest,'" and, thus, satisfied the public concern element. *Id.* Thus, Plaintiff has sufficiently demonstrated that his labor union activity touched on a matter of public concern.

## 2. Plaintiff's Conduct Also Satisfies The Public Concern Element

A public employee's conduct will touch on a matter of public concern if it "relates 'to any matter of political, social or other concern to the community.'" *Johnson v. Grimm*, 342 F.3d 105, 112 (2d Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983)). Additionally, as the Second Circuit has recently reaffirmed, a public employee's motive in speaking "is not dispositive as to whether his speech addressed a matter of public concern." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (reversing district court grant of summary judgment) (quoting *Reuland v. Hynes*, 460 F.3d 409, 415 (2d Cir. 2006). This is particularly true with respect to matters related to education of public school students. *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) ("statements regarding the quality of education provided by the public school" may reasonably be considered a matter of public concern).

While City Defendants attempt to characterize Plaintiff's labor union activity as related solely to "personal workplace issues,"[4] it is undisputed that Defendant Kirkweg viewed Plaintiff's labor union activity as extending beyond personal workplace issues and relating directly to the education of students attending the School which establishes that Plaintiff's labor union activity touches on a matter of public concern. Indeed, Defendant Kirkweg testified that the grievance that TSgt. Mahaffy filed with the UFT was an indication that he that he was not interested in putting the children first (*see* Pl. 56.1 ¶ 86), and that she did not believe that "people

---

[4]    City Defendants reliance on *Weintraub* for the proposition that an employee's grievance regarding workplace issues are not matters of public concern is misplaced as *Weintraub* is specifically limited to the issue of whether the plaintiff was speaking as a citizen. *Weintraub*, 593 F.3d at 201. Indeed, after holding that the plaintiff failed to establish that he was speaking as a citizen, the court stated, "there is no cause for us to address whether it related to a 'matter of public concern.'" *Id.*

who were forced to work hours that they don't want to work are good for the children" and that it was "not going to be good for children to be with these people during those times." (Pl. 56.1 ¶ 84). Thus, as Defendant Kirkweg's testimony establishes, there are, at the very least, genuine issues of fact regarding whether Plaintiff's protected conduct was inextricably tied to the quality of the education that the students at the School received, such that Plaintiff's labor union activity touches on a matter of public concern sufficient to establish a claim under the First Amendment.

It is also undisputed that Plaintiff's protected labor union activity had an effect that was unquestionably a matter of public concern as Defendant Kirkweg testified that changing the JROTC instructor's schedules to comply with the collective bargaining agreement had a domino effect that required all of the other teachers' schedules to change along with the students' class schedules. (Pl. 56.1 ¶ 95-96). Indeed, Defendant Kirkweg testified that the need to make scheduling changes following TSgt. Mahaffy's labor union activity "[wreaked] havoc with the schedule" of teachers and students alike (Pl. 56.1 ¶ 97), which in turn resulted in numerous complaints from parents regarding such scheduling changes as well as news coverage from print and television news sources. (Pl. 56.1 ¶¶ 143, 144a, 145, 161). Thus, viewing the evidence in the light most favorable to Plaintiff as the non-moving party, there are, at the very least, numerous genuine issues of material fact which preclude summary judgment on this claim.

### D. PLAINTIFF SUFFERED AN ADVERSE EMPLOYMENT ACTION AND THERE IS A CAUSAL CONNECTION BETWEEN PLAINTIFF'S PROTECTED LABOR UNION ACTIVITY AND THE ADVERSE EMPLOYMENT ACTION

In their motion, City Defendants do not dispute that Plaintiff suffered an adverse employment action or that Plaintiff's protected labor union activity was a motivating factor in the adverse action. Indeed, there can be no dispute that Plaintiff suffered the following adverse employment actions following his protected labor union activity: (i) demotion from the Senior Aerospace Science Instructor position, (ii) two written complaints from the School's parent

coordinator, a series of written complaints and letters to the file from the School's Assistant Principal, and an unsatisfactory lesson observation, (iii) the termination of his employment as an Aerospace Science Instructor at Bronx Aerospace, and (iv) a unsatisfactory performance report for the 2007 – 2008 school year which barred Plaintiff from working for any other school within the DOE. (Pl. 56.1 ¶¶ 89-94); see *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.").

Similarly, City Defendants do not dispute that Plaintiff's protected labor union activity was a motivating factor in the decision to both (i) remove him from the position of Senior Aerospace Science Instructor and (ii) terminate his employment as a teacher at Bronx Aerospace. With respect to his removal from the Senior Aerospace Science Instructor position, Defendant Kirkweg does not dispute that, had Plaintiff not complained about his work schedule, he would have continued to fill the Senior Aerospace Science Instructor position. (Pl. 56.1 ¶ 94). Indeed, Defendant Kirkweg admitted that she removed Plaintiff from the SASI position when she wrote to the Air Force shortly after Plaintiff's protected labor union activity, stating:

> I write to rescind my request for TSgt. Mahaffy to fill the SASI position on a temporary basis. Acting in that capacity, TSgt. Mahaffy petitioned the teacher's union to change the sergeants' schedules at the beginning of this semester when each of them were assigned to work 7:00 a.m. to 4:00 p.m. citing that other teachers work a 6 hr, 50 min day.

(Pl. 56.1 ¶ 93).

With respect to Plaintiff's termination, the timing of the written reprimands (including three on one day) is strong circumstantial evidence that these adverse actions were based on an improper intent to retaliate against Plaintiff for having engaged in protected activity. *See Anderson v. New York*, 614 F. Supp. 2d 404, 429-30 (S.D.N.Y. 2009) (temporal proximity "creates a strong inference of causation, particularly where plaintiff does not allege that she

engaged in numerous acts of speech over a long period of time"). Prior to engaging in his protected labor union activity, Plaintiff was repeatedly praised by Defendant Kirkweg for the manner in which he performed his duties. (Pl. 56.1 ¶¶ 59-61). Indeed, prior to the start of that school year, Defendant Kirkweg praised Plaintiff, telling him that, "I am very grateful for the time and extraordinary effort you have put into making this our best bridge program ever. Our kids are Blessed to have you as our SASI." (Pl. 56.1 ¶ 59). Further, in prior testimony before an appeal board hearing Plaintiff's appeal of his unsatisfactory performance rating, Defendant Kirkweg confirmed that, between September 2007 and February 2008, Plaintiff's work performance was satisfactory. (Pl. 56.1 ¶ 62). Yet, within one week of having engaged in protected labor union activity, Plaintiff received an unsatisfactory lesson observation from Assistant Principal MaryAnne Mandell and a written complaint from the School's parent coordinator. (Pl. 56.1 ¶¶ 98, 103). In the weeks that followed, Plaintiff continued to receive additional letters to the file (including three on the same day) all of which served to create a purportedly legitimate justification for Defendant Kirkweg to terminate Plaintiff's employment with the School. (Pl. 56.1 ¶¶ 105-128).

When this same evidence was reviewed by the committee that considered Plaintiff's appeal of his unsatisfactory rating, the committee determined that, "[t]he testimony of Principal Kirkweg is not convincing. . . The documentation from the Administration that was submitted for hearing such as letters to the file . . . do not warrant an unsatisfactory rating." Further, the committee found that "[t]he claim made by [Plaintiff] and the UFT Advisor that the disciplinary actions began after the school had to be reprogrammed [as a result of Plaintiff's grievance] cannot be dismissed." (Pl. 56.1 ¶ 170).

Going beyond the suspicious timing of these adverse employment action, there is also direct evidence that Plaintiff's protected labor union activity was a motivating factor in the

decision to terminate Plaintiff's employment:

- Greg Winn, Deputy Director of the United States Air Force Junior Reserve Officer Training Corps, testified that he met with Defendant Kirkweg following Plaintiff's complaint to the UFT and in that meeting, Defendant Kirkweg "stated, in sum and substance, that because TSgt. Mahaffy went to the labor union to question the schedule that Principal Kirkweg assigned to him, TSgt. Mahaffy 'did not have the level of dedication that she wanted' and she 'was going to get rid of him, one way or another.'" When Mr. Winn expressed his concern that Defendant Kirkweg's actions seemed retaliatory, Defendant Kirkweg responded, in sum and substance, "Yes it is; I understand that and I'm going to do it." (Pl. 56.1 ¶¶ 150-151);

- MaryAnne Mandell, Assistant Principal of Bronx Aerospace testified that, as a result of the grievance filed by TSgt. Mahaffy, she no longer believed that TSgt. Mahaffy was committed to teaching at the School and that, if she was principal of the School, this would have been a factor in the decision to terminate TSgt. Mahaffy's employment with the School. (*See* Pl. 56.1 ¶ 152).

Thus, when viewing this evidence (both direct and circumstantial) in the light most favorable to Plaintiff as the non-moving party, Plaintiff has demonstrated that he suffered a number of adverse employment actions and that there are genuine issues of fact regarding whether his protected labor union activity was a motivating factor in such adverse employment, which requires the denial of Defendant's motion for summary judgment on this claim.

## III. CITY DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR ENGAGING IN SPEECH PROTECTED BY THE FIRST AMENDMENT

In order to establish a First Amendment speech retaliation claim, a plaintiff must establish that: (i) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (ii) that he suffered an adverse employment action; and (iii) that the speech was a motivating factor in the adverse employment action. *Zelnick v. Fashion Inst. of Tech.,* 464 F.3d 217, 225 (2d Cir. 2006). In seeking summary judgment, City Defendants' argue that: (i) Plaintiff's speech was not protected because he was not speaking as a citizen on a matter of public concern, and (ii) Defendant Kirkweg did not know that Plaintiff had reviewed and assisted in the delivery of the letter to parents. (*See* City Def. Br.

at 11, 14).  For the reasons outlined below, City Defendants' motion for summary judgment on

Plaintiff's First Amendment retaliation claim fails as a matter of law.

### A.  PLAINTIFF ENGAGED IN PROTECTED ACTIVITY BY REVIEWING AND ASSISTING IN THE DELIVERY OF THE MARCH 31, 2008 LETTER TO PARENTS

Contrary to City Defendants' arguments, Plaintiff's conduct in reviewing and assisting

with the delivery of the March 30, 2008 letter to parents of children assigned to Bronx Aerospace

constitutes protected activity pursuant to the First Amendment because such conduct was not

part of his official duties as an Aerospace Science Instructor at the School and because the

content of the March 30, 2008 letter was on a matter of public concern, namely concerns related

to the education that students at the School at that time.

In determining whether a public employee engaged in speech protected by the First

Amendment, the Supreme Court has instructed that the relevant inquiry is "whether the

employee spoke as a citizen on a matter of public concern" (*Garcetti*, 547 U.S. at 418), and that

"[w]hether an employee's speech addresses a matter of public concern must be determined by

the content, form and context of a given statement, as revealed by the whole record." *Connick*,

461 U.S. at 147-48.   The standard for determining whether speech is protected by the First

Amendment "contains two separate requirements – namely, (1) that the employee speak as a

citizen, and (2) that the employee speak on a matter of public concern." *Castro v. County of*

*Nassau*, No. 08 Civ. 297 (JFB)(ETB), 2010 U.S. Dist. LEXIS. 95064, *60 (E.D.N.Y. Sept. 13,

2010).  As outlined below, Plaintiff's First Amendment speech retaliation claim satisfies both

elements of this standard.

### 1.  Plaintiff Was Speaking As A Citizen In The March 30, 2008 Letter To Parents

In addressing the citizen requirement, the Supreme Court has provided that "when public

employees make statement *pursuant to their official duties*, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421 (emphasis added). As the Second Circuit recently instructed in *Weintraub*, "the objective inquiry into whether a public employee spoke 'pursuant to' his or her job duties is 'practical one'" (*Weintraub*, 593 F.3d at 202), but "the *controlling factor* in [the plaintiff's] case is that his expressions were made pursuant to his duties." *Id.* at 421 (emphasis added). While City Defendants assert that the issues addressed in the March 30, 2008 letter are "'part and parcel' of the job of being a teacher" and are motivated by an "interest in the 'education' and 'well-being' of children in the school," (see City Def. Br. at 11), they fail to support these conclusory assertions with citations to the extensive factual record.

In the present case, Plaintiff was not acting pursuant to his official duties when he and other teachers sent the March 30, 2008 letter to parents of students at the School. Indeed, Defendant Kirkweg's own testimony establishes that sending this letter to parents of children attending the School fell outside of the job duties of a teacher employed by the School and that she was shocked when she initially received a copy of the letter, explaining, "I think it's not something that I consider normal fair for teachers, staff members, to do." (Pl. 56.1 ¶ 138). Defendant Kirkweg further elaborated, explaining, "it's a letter that's extremely derogatory in nature and asks people to write to he mayor. I mean this is not something that usually happens in high schools, as far as I know." (Pl. 56.1 ¶ 139). Additionally, Defendant Kirkweg testified that she believed that this was something that should have been addressed with her or the administration rather than directly with parents, and that if it was addressed with the parents, it should be done through the DOE. (Pl. 56.1 ¶ 140). Thus, in light of Defendant Kirkweg's own testimony, there are genuine issues of material fact regarding whether Plaintiff was speaking pursuant to his official job duties which preclude summary judgment.

## 2. The Content Of The March 31, 2008 Letter Addresses A Matter Of Public Concern

As noted above, in order for a public employee to pursue a claim for First Amendment speech retaliation, he must first establish that the speech at issue relates "to any matter of political, social, or other concern to community." *Connick*, 461 U.S. at 146. Further, a "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004). In the education context, "statements regarding the quality of education provided by the public school . . . may reasonably be considered a matter of public concern." *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996).

With this framework in mind, the March 30, 2008 letter easily satisfies the public concern requirement as it addresses a number of issues concerning "the education and well being" of children attending Bronx Aerospace. (Pl. 56.1 ¶ 130-134 ). Specifically, these teachers advised parents that "a previously united student body has now been divided into two separate entities meaning there will be two separate graduating ceremonies for the same graduating class" as result of the "'division' of the JROTC program." (Pl. 56.1 ¶ 131) While the division of the JROTC program may seem like a benign issue that might not appear to be a matter of public concern, this was an important issue for members of the school community. In fact, within ten days of the March 30, 2008 letter, the District Family Advocate for Bronx Aerospace reported that (i) there had been nine reports to the City's 311 call center, (ii) twenty-two phone calls to the District Family Advocate's Office his office, (iii) eleven walk-in visits from parents, all of them concerning the division of the School and the accompanying scheduling change. (Pl. 56.1 ¶ 142). The District Family Advocate also noted that "[a]ll parents who have called have stated they attempted to speak with Defendant Kirkweg" about this, "but she refused to meet with

them." (*Id.*) Similarly, on or about April 28, 2008, a parent emailed Superintendent Papaliberios (presumably using the email address provided in the March 30, 2008 letter) to raise concerns nearly identical to those addressed in the March 30, 2008 letter. (Pl. 56.1 ¶ 144). Additionally, on May 8, 2008, a press conference was held by parents of students assigned to Bronx Aerospace regarding "what parents and students feel has been unfair treatment from the Principal and some staff members at the school," as well as the School's uniform policy, program changes and the lack of communication with parents. (Pl. 56.1 ¶ 145). Further underscoring the fact that this was a legitimate news interest is the New York Daily News article reporting the School being placed on probation by the Air Force which references many of these complaints, "including 29 filed by parents with the [C]ity and scores of grievances from the teachers union." (Pl. 56.1 ¶ 161). Thus, there can be no dispute that the content of the March 30, 2008 letter touches on a matter of public concern which precludes summary judgment on this issue.

**B. PLAINTIFF SUFFERED ADVERSE EMPLOYMENT ACTIONS AND THERE IS A CAUSAL CONNECTION BETWEEN PLAINTIFF'S PROTECTED SPEECH AND THE ADVERSE EMPLOYMENT ACTIONS**

As with their opposition to Plaintiff's protected labor union activity, City Defendants do not dispute that Plaintiff suffered an adverse employment action soon after he engaged in activity constituting speech protected by the First Amendment. Indeed, the facts outlined above establish that Plaintiff suffered the following adverse employment actions shortly after the March 30, 2008 letter was sent to parents: (i) a series of letters to the file from the School's Assistant Principal (all of which were delivered within the span of three days), (ii) the termination of his employment as an Aerospace Science Instructor at Bronx Aerospace, and (iii) a unsatisfactory performance report for the 2007 – 2008 school year which barred Plaintiff from working for any other school within the DOE. (Pl. 56.1 ¶¶ 120 -128, 146-147, 168-169).

As with Plaintiff's protected labor union activity claim, there is a strong inference that can be drawn from the temporal proximity between Plaintiff's March 30, 2008 protected activity and the letters to file that he received which served as one of the bases of his termination (dated April 11, 2008) and the termination of his employment with the School (dated May 3, 2008). While City Defendants assert that Plaintiff cannot demonstrate that his protected activity was a motivating factor in these adverse action because Defendant Kirkweg "did not specifically know that plaintiff was one of the group of teachers who authored the March 30, 2008" letter (*see* City Def.. Br. at 14-15), Defendant Kirkweg's deposition testimony, as well as the affidavit of TSgt. McCoy, establishes that there is a genuine issue of material fact regarding whether Defendant Kirkweg believed Plaintiff was responsible for the March 30, 2008 letter.

Specifically, TSgt. McCoy testifies that shortly after the letter was sent to parents, he was in Principal Kirkweg's office where she showed him a copy of the March 30, 2008 letter and, in what he believed to be a clear and obvious reference to TSgt. Mahaffy, stated, in sum and substance, "I see the letter that your friend sent to the parents." (Pl. 56.1 ¶ 135). TSgt. McCoy testifies that he has "no doubt that Principal Kirkweg was referring to TSgt. Mahaffy" when she made this statement. (*Id.*). Similarly, Defendant Kirkweg testified that she believed that, based on the content of the March 30, 2008 letter, the drafters of the letter had input from one of the three JROTC instructors. (Pl. 56.1 ¶ 137).

In light of the foregoing evidence, which is required to be viewed in the light most favorable to Plaintiff as the non-moving party, there are genuine issues of material fact which preclude summary judgment on his First Amendment speech retaliation claim.

## IV. PLAINTIFF HAS ESTABLISHED A FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

In addition to Plaintiff's First Amendment retaliation claims, Plaintiff has also established a Fourteenth Amendment equal protection clause claim relating to Defendant Kirkweg's selective treatment of Plaintiff after having engaged in labor union activity and speech protected by the First Amendment. In seeking summary judgment on this issue, City Defendants raise a number of conclusory allegations which are either unsupported by any factual or legal analysis or are based on a misunderstanding of Plaintiff's equal protection claim.

In order to state a selective enforcement claim pursuant to the Equal Protection Clause, a plaintiff must establish that (i) he was treated differently than others similarly situated, and (ii) that such selective treatment was based on impermissible considerations, such as race, religion, an intent to inhibit or punish the exercise of a constitutional right, or malicious or bad faith intent to injure. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). As outlined below, Plaintiff has established a prima facie case for selective enforcement and City Defendants have failed to present any argument supporting their entitlement to summary judgment on this claim.

### A. PLAINTIFF WAS TREATED DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS

With respect to Plaintiff's selective enforcement claim, Plaintiff was similarly situated to MSgt. Joseph Picone and TSgt. Bobby Williams, both of whom were given the option to resign in lieu of termination following the 2006 – 2007 school year after Defendant Kirkweg determined that they were either unable or unwilling to work the hours that she required for a JROTC instructor, while Plaintiff was terminated (without being provided the opportunity to resign) and received an unsatisfactory rating which barred him from applying for other positions within the DOE. (Pl. 56.1 ¶¶ 65, 70, 146, 148, 168-169). Unlike MSgt. Picone and TSgt.

Williams, however, Plaintiff engaged in activity protected by the freedom of speech and freedom of association clauses of the First Amendment.

To be similarly situated, the individuals with whom a plaintiff seeks to compare himself must be "similarly situated in all material respects." *Shumway v. UPS*, 118 F.3d 60, 64 (2d Cir. 1997). In order to satisfy the similarly situated standard, "a plaintiff must show that her co-employees were subject to the same performance evaluations and discipline standards." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). As the Second Circuit has instructed, "[w]hat constitutes 'all material' respects therefore varies from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* This standard does not, however, require a showing that both cases are identical and instead "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.* (citing *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999) (explaining that "reasonableness is the touchstone" and recognizing that "the plaintiff's case and the comparison cases . . . need not be perfect replicas"). Finally, "[w]hether two employees are similarly-situated ordinarily presents a question of fact for the jury." *Graham*, 230 F.3d at 44 (reversing summary judgment and finding that district court conclusions regarding the similarity of comparators improperly resolved factual questions).

While all MSgt. Picone and TSgt. Williams were employed as JROTC instructors at the time that Plaintiff was hired in February 2007, shortly thereafter, Defendant Kirkweg requested that they resign their employment with the School effective at the end of the school year. (Pl. 56.1 ¶¶ 65, 70). Defendant Kirkweg testified that she requested MSgt. Picone's and TSgt. Williams' resignation because she determined that they were no longer an "appropriate fit" for

Bronx Aerospace because they were unwilling or unable to work after school and on weekends. (*Id.*). Notwithstanding this termination, Defendant Kirkweg provided them with notice of her decision 60 days prior to the end of the school year, permitted them to retain their position with the School during these 60 days, provided them with the opportunity to seek employment at other schools in New York City, and even offered to recommend them for future employment. (*Id.*).

As she had determined with respect to MSgt. Picone and TSgt. Williams, Defendant Kirkweg determined that Plaintiff was not a "good fit" for Bronx Aerospace, in part, because she perceived him as unwilling to work the hours that she expected him to work as an Aerospace Science Instructor at the School. (Pl. 56.1 ¶ 171). Unlike MSgt. Picone and TSgt. Williams, however, Defendant Kirkweg did not permit TSgt. Mahaffy to resign his employment with Bronx Aerospace so that he might seek employment at another school and did not offer to recommend him for future employment; instead, she rated him unsatisfactory, which prevented him from applying to other DOE schools. (Pl. 56.1 ¶¶ 148, 168, 169). Indeed, Defendant recognizes the distinction between her treatment of MSgt. Picone and TSgt. Williams and that of Plaintiff, stating that "[t]ermination has different connotations than a resignation. For instance [MSgt.] Picone went to look for a position at another school in New York City, which would have been unlikely had he been terminated." (Pl. 56.1 ¶ 66). Unlike her treatment of MSgt. Picone and TSgt. Williams, Defendant Kirkweg terminated Plaintiff's employment with the School prior to the conclusion of the school year and rated him overall unsatisfactory for that school year, which prevented him from seeking employment as a JROTC instructor with another school located in New York City. (Pl. 56.1 ¶ 169).

**B.** **THE SELECTIVE TREATMENT OF PLAINTIFF WAS BASED ON HIS EXERCISE OF CONSTITUTIONAL RIGHTS PROTECTED BY THE FIRST AMENDMENT**

For the same reasons outlined in sections I.D and II.B, there are genuine issues of fact regarding whether Plaintiff's protected labor union activity and/or speech were a motivating factor in the decision to terminate his employment with Bronx Aerospace which preclude summary judgment on Plaintiff's Fourteenth Amendment selective enforcement claim.

**C.** **CITY DEFENDANTS HAVE FAILED TO ARTICULATE ANY GROUNDS THAT ESTABLISH THAT THEY ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S EQUAL PROTECTION CLAUSE CLAIM**

In moving for summary judgment on Plaintiff's claim pursuant to the equal protection clause of the Fourteenth Amendment, City Defendants appear to argue (without any analysis) that Plaintiff's claim fails for one of the following reasons: (i) Plaintiff has failed to identify the protected class to which he belongs, (ii) Plaintiff impermissibly bases his claim on the "class of one" theory that has been explicitly rejected by the Supreme Court, and (iii) the equal protection clause does not permit a plaintiff to pursue claims of retaliation. As discussed below, each of these arguments is either factually or legally inapposite and do not entitle City Defendants to summary judgment on Plaintiff's selective enforcement claim.

Contrary to City Defendants' argument, Plaintiff is not required to identify a protected class to which he belongs in order to pursue a claim under the equal protection clause of the Fourteenth Amendment. As noted above, such a claim may lie where a plaintiff is subjected to selective treatment based on impermissible considerations, which may include a protected classification (such as race or religion) or an intent to inhibit or punish the exercise of a constitutional right. *See Diesel*, 232 F.3d at 103; (quoting *LeClair*, 627 F.2d at 608). Because Plaintiff has identified protected activity which serves as the basis for his selective enforcement claim, he is not required to identify a protected class to which he belongs. Similarly, Plaintiff's

equal protection claim is not barred by the Supreme Court's rejection of the "class of one" theory as it relates to public employers in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), because Plaintiff's selective enforcement claim is not based on an alleged irrational basis or motivation, but on an intent to punish him for exercising a constitutional rights. *See Osborne v. Fernandez*, No. 06 Civ. 4127 (CLB)(LMS), 2008 U.S. Dist. LEXIS 116797, *103-104 (S.D.N.Y. July 16, 2008) ("Class of one equal protection claims allow complainants to bring selective enforcement claims where the motivation for the alleged unequal treatment is not based upon a protected classification, such as gender or race, or upon the exercise of a plaintiff's fundamental constitutional rights, *but is based upon an alleged irrational basis or motivation.*") (emphasis added). Because Plaintiff's claim is not premised on an alleged irrational basis or motivation, it is unaffected by the Supreme Court's decision in *Engquist*. *See Green v. City of New York*, No. 06 Civ. 1836 (RJD)(LB), 2009 U.S. Dist. LEXIS 1836, *32-33 n.13 (E.D.N.Y. Sept. 22, 2009) (recognizing validity of selective enforcement claim in public employment context following *Engquist*).

Further, City Defendant's argument that "[t]here is no recognized claim for retaliation under the equal protection clause" mischaracterizes Plaintiff's claim as one for retaliation rather than selective enforcement.[5] The Complaint clearly establishes that Plaintiff's equal protection clause claim is based on selective enforcement and not retaliation. *See* Complaint, ¶ 84 ("Defendants subjected Plaintiff to selective treatment with the intent of punishing him for exercising rights protected by the United States Constitution."); *see also Abel v. Morabito*, No. 04 Civ. 7284 (PGG), 2009 U.S. Dist. LEXIS 9631, *15-16 n.5 (S.D.N.Y. Feb. 11, 2009). In

---

[5]     City Defendants' citation to *Bernheim v. Litt* is misleading given that City Defendants' inaccurately quote the court's decision in the accompanying parenthetical which provides, in relevant part, "we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of *racial* discrimination." *Bernheim*, 79 F.3d at 323. Thus, when viewed in the proper context, *Bernheim* does not support dismissal of Plaintiff's claim under the equal protection clause.

*Abel*, the court was presented with and rejected this same argument, finding that "Plaintiff is clearly asserting a selective enforcement claim . . . , and in cases where the plaintiff has asserted First Amendment retaliation and Fourteenth Amendment selective enforcement claims arising from the same facts, the Second Circuit has considered both claims." *Id.* (citing *Cobb*, 363 F.3d 89; *African Trade & Information Ctr., Inc. v Abromaitis*, 294 F.3d 355 (2d Cir. 2002); *Brady v. Town of Colchester*, 863 F.2d 205, 216-17 (2d Cir. 1988).

Thus, City Defendants have failed to establish that they are entitled to summary judgment on Plaintiff's claim under the equal protection clause of the Fourteenth Amendment.

## V.  PLAINTIFF HAS ESTABLISHED MUNICIPAL LIABILITY UNDER *MONELL*

City Defendants argue, without any clear explanation, that there is no basis for municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), while at the same time conceding Joel Klein, Chancellor of the DOE, is a final policy maker for purposes of establishing municipal liability under *Monell*. (*See* City Def. Br. at 15-16). As City Defendants' note in their brief, in order to establish municipal liability, Plaintiff need not identify a municipal policy or custom as municipal liability can attach based on a single decision of an official "whose acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).  While City Defendants agree that Chancellor Klein is such an official whose acts can establish *Monell* liability, they try to avoid such liability by asserting – without any explanation – that Chancellor Klein's conduct did not cause the deprivation of rights at issue. (*See* Def. Br. at 16).  Such argument, however, fails in light of the fact that Chancellor Klein twice ratified the decisions of Principal Kirkweg in terminating Plaintiff's employment with Bronx Aerospace.  (Pl. 56.1 ¶ 167, 179).

Municipal liability under *Monell* may also be established by demonstrating that an authorized policymaker approved a subordinate's decision. *Amnesty Am. v. Town of W.*

24

*Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).  As the Second Circuit explained in *Amnesty America*, "when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority.  One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinate's actions." *Amnesty Am.*, 361 F.3d at 127.

In the instant matter, there can be no dispute that Chancellor Klein ratified Defendant Kirkweg's decision to terminate Plaintiff's employment with Bronx Aerospace as well as her decision to rate TSgt. overall unsatisfactory for the 2007 – 2008 school year.  Specifically, Chancellor Klein denied Plaintiff's grievance regarding his termination, finding that the "[a]dministration properly terminated [Plaintiff], a regular substitute teacher, effective May 23, 2008 for unsatisfactory work performance."  (Pl. 56.1 ¶ 165).  Similarly, Chancellor Klein denied Plaintiff's appeal of his unsatisfactory rating, finding that "said rating is sustained as a consequence of a poor professional attitude, poor delivery of instruction, and failure to support school activities."  (Pl. 56.1 ¶ 180).  Thus, while the unlawful actions (up to and including Plaintiff's termination) were initially committed by Defendant Kirkweg, there is sufficient evidence that Chancellor Klein ratified Defendant Kirkweg's actions so as to establish liability under *Monell*.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny City

Defendants' motion for summary judgment in its entirety and calendar the trial of this action to

commence expeditiously.

Dated: September 24, 2010
      New York, New York        Respectfully submitted,

                                 THOMPSON WIGDOR & GILLY LLP

By: _____
                 Scott B. Gilly
                 Gregory N. Filosa

               85 Fifth Avenue, Fifth Floor
               New York, New York 10003
               Telephone: (212) 257-6800
               Facsimile: (212) 257-6845

               *Counsel for Plaintiff Robert Mahaffy*