**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- x

ROBERT A. MAHAFFY,                                                  :
                                                                    :
                                Plaintiff,    :    Case No. 09 Civ. 1593 (AKH)
                                                                    :
          v.                                                         :
                                                                    :
THE CITY OF NEW YORK; THE NEW YORK                                  :
CITY DEPARTMENT OF EDUCATION; BRONX                                 :
AEROSPACE ACADEMY HIGH SCHOOL; and                                  :
BARBARA KIRKWEG, in her official and individual                     :
capacities,                                                         :
                                                                    :
                            Defendants.    :
-------------------------------------------------------------------- x

## <u>PLAINTIFF'S RULE 56.1 COUNTER-STATEMENT OF MATERIAL FACTS IN RESPONSE TO CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and in response to the City Defendants' Local Rule 56.1 Statement of Undisputed Material Facts annexed to the Motion for Summary Judgment by Defendants the City of New York (the "City"), the New York City Department of Education ("DOE") and Bronx Aerospace Academy ("Bronx Aerospace" or the "School") (collectively, "City Defendants"), Plaintiff Robert Mahaffy ("Plaintiff" or "TSgt. Mahaffy"), by his attorneys, Thompson Wigdor & Gilly LLP, respectfully submits the following statement of material facts in dispute, which demonstrates that there are genuine issues of material facts to be tried which preclude summary judgment:

## PLAINTIFF'S COUNTER-STATEMENTS TO CITY DEFENDANTS' LOCAL RULE 56.1 STATEMENTS OF UNDISPUTED FACTS

1.      Admit for purposes of this motion.[1]

2.      Admit for purposes of this motion.

3.      Admit for purposes of this motion.

4.      Admit for purposes of this motion.

5.      Admit for purposes of this motion, except state that Defendant Kirkweg was not on active duty with the United States Air Force ("Air Force") while she attended Embry Riddle Aeronautical University in Prescott, Arizona from 1982 to 1984.  Mr. Kirkweg returned to active duty with the Air Force following her graduation in from Embry Riddle Aeronautical University in 1984.  (Kirkweg Dep. 36:2-25, attached as Exhibit 5 to the Filosa Declaration).[2]

6.      Admit for purposes of this motion.

7.      Admit for purposes of this motion, except state that Defendant Kirkweg did not serve in the position of Senior Aerospace Science Instructor ("SASI") from 2001 to 2002. During this period of time, Defendant Kirkweg was transitioning to the position of Principal of Bronx Aerospace and Major Kelly was the SASI from 2001 to 2002.  (Kirkweg Dep. 49:2-13).

8.      Controverted.  As a principal, Defendant Kirkweg can only *recommend* the termination of employees, the superintendent must approve a principal's recommendation before an employee is terminated.  (Papaliberios Dep. 115:24-116:2, attached as Exhibit 7 to the Filosa Declaration).  In order to terminate TSgt. Mahaffy's employment with Bronx Aerospace and the

---

[1]     All statements of fact not controverted herein are "admitted" solely for purposes of this Rule 56.1 Counter-Statement in opposition to City Defendants' motion for summary judgment.

[2]     All transcripts of depositions taken in this case are cited hereinafter as "Dep." preceded by the last name of the deponent.

DOE, Superintendent Elena Papaliberios was required to approve Defendant Kirkweg's recommendation.  (*Id.* at 116:3-5).

9.    Admit for purposes of this motion, except state that Defendant Kirkweg testified that she had two interviews with TSgt. Mahaffy.  (Mahaffy Dep. 98:22-24, attached as Exhibit 4 to the Filosa Declaration).

10.    Admit for purposes of this motion that TSgt. Mahaffy was hired by the DOE to be an Aerospace Science Instructor ("ASI") at Bronx Aerospace beginning in February 2007. (Mahaffy Dep. 26:11-24).  Dispute that TSgt. Mahaffy was notified that he was to be employed as a regular substitute teacher.  (Mahaffy Dep. 26:18-19).  During his employment with Bronx Aerospace, Defendant Kirkweg repeatedly told TSgt. Mahaffy and the other ASIs that they were not regular teachers and were not covered by the collective bargaining agreement between the United Federation of Teachers ("UFT" or the "Union") and the DOE.  (Mahaffy Affidavit, ¶ 22). Further, Defendant Kirkweg testified that she never had any discussion with TSgt. Mahaffy about his status as a regular substitute teacher.  (Kirkweg Dep. 99:19-100:5).

11.    Admit for purposes of this motion, except state that TSgt. Mahaffy was employed in the SASI position from March 2007 until February 2008.  (Mahaffy Dep. 33:16-20, 34:8-25; Kirkweg Dep. 203:22).

12.    Controverted.  At the time that he began his employment with the DOE, TSgt. Mahaffy was paid a salary of $79,835.00; at the time his employment was terminated, TSgt. Mahaffy was paid a salary of $86,832.00.  (Filosa Decl. Ex. 10).  Further, TSgt. Mahaffy testified that Defendant Kirkweg told him that the ASI salary was approximately one-third more than the standard teacher salary, but that an ASI's salary was related to his retired rank and not the salary that was paid to a teacher.  (Mahaffy Dep. 28:20-30:9).

13.     Admit for purposes of this motion, except state that TSgt. Mahaffy had more than 17 years of experience as an Air Force instructor.  (Mahaffy Dep. 19:19-24).

14.     Controverted.  While TSgt. Mahaffy testified that he attended an instructor training course as part of the Air Force training that was required prior to a promotion to the rank of Sergeant (Mahaffy Dep. 21:21-22:22), TSgt. Mahaffy also had more than seventeen years of experience as an Air Force instructor, which required approximately 10 to 15 day of classroom instruction per year.  (Mahaffy Dep. 20:6-21:14; Mahaffy Affidavit, ¶ 5).

15.     Controverted.  The quoted testimony does not support the assertion that, during TSgt. Mahaffy's seventeen years as an Air Force instructor, he only taught in the classroom setting ten to fifteen times.  (Mahaffy Dep. 20:22-21:7).

16.     Admit for purposes of this motion.

17.     Qualified.  The May 3, 2008 letter advising TSgt. Mahaffy that his employment was being terminated effective May 23, 2008 did not attach all of the documents cited in the letter, as the two written complaints from the School's Parent Coordinator were not attached. (Mahaffy Affidavit, ¶ 34; Filosa Decl. Ex. 10, at 11).

18.     Admit for purposes of this motion.

19.     Admit for purposes of this motion, except state that, prior to February 2008, TSgt. Mahaffy filled out the UFT's membership application.

20.     Admit for purposes of this motion.

21.     Admit for purposes of this motion, except state that TSgt. Mahaffy's complaint to Ms. Appiah did not reference whether he was being compensated for time worked in excess of eight hours in a given day.  (Mahaffy Dep. 136:20-24; Mahaffy Affidavit, ¶ 20).

22.     Admit for purposes of this motion.

23.     Admit for purposes of this motion.

24.     Admit for purposes of this motion, except state that Assistant Principal Mandell did not testify that Defendant Kirkweg told her to change TSgt. Mahaffy's schedule, instead Ms. Mandell only testified that it was "possible" that TSgt. Mahaffy's schedule had been changed as a result of the grievance filed by TSgt. Mahaffy.

25.     Admit for purposes of this motion, except state that Defendant Kirkweg also testified that she changed the schedule (i) "because they objected to it, and I do not believe that people who are forced to work hours that they don't want to work are good for children," (ii) because "they didn't want to work the hours" and (iii) because she believes that "if people . . . are forced to work hours that they are grieving, that they are in disagreement with, that it's not going to be good for children to be with these people during those times." (Kirkweg Dep. 88:15-89:10).

26.     Admit for purposes of this motion.

27.     Admit for purposes of this motion.

28.     Admit for purposes of this motion.

29.     Admit for purposes of this motion.

30.     Admit for purposes of this motion, except state that the documentation submitted by Defendant Kirkweg does not establish that TSgt. Mahaffy was paid for each additional teaching period covered by the grievance, only that he was paid $1,579.29 in wages reflecting per session payments for the time period between January 3, 2008 and February 20, 2008. (Filosa Decl., Ex. 10).

31.     (a)  Admit for purposes of this motion.

        (b)  Admit for purposes of this motion.

(c)  Admit for purposes of this motion.

(d) Admit for purposes of this motion.

(e) Admit for purposes of this motion.

(f) Admit for purposes of this motion.

(g) Admit for purposes of this motion, except state that TSgt. Mahaffy does not know how the mailing list for the March 30, 2008 letter was obtained.  (Mahaffy Dep. 163:1-7).

(h) Admit for purposes of this motion.

(i) Admit for purposes of this motion.

32.     Admit for purposes of this motion.

33.     Admit for purposes of this motion.

34.     Admit for purposes of this motion, except state that Defendant Kirkweg testified that the March 30, 2008 letter contained "a lot of information about Junior ROTC, that only Junior ROTC people would have.  Not specifically him, but the other two and I'm not sure teachers would know the specifics that are contained in there." (Kirkweg Dep. 439:3-10).

35.     Admit for purposes of this motion.

36.     Controverted.  Shortly after the March 30, 2008 letter was sent to parents, TSgt. McCoy was present in Defendant Kirkweg's office when she showed him a copy of the letter then stated, in sum and substance, "I see the letter that your friend sent to the parents."  TSgt. McCoy believed this to be a clear and obvious reference to TSgt. Mahaffy.  (Affidavit of William McCoy, attached as Exhibit 8 to the Filosa Declaration).

37.     Controverted.  Assistant Principal Mandell testified that after she received a copy of the March 30, 2008 letter, she discussed the letter with Defendant Kirkweg and that Defendant Kirkweg said that she assumed that the letter was written by teachers who are not happy about

the school, but she did not remember whether Defendant Kirkweg said anything about TSgt. Mahaffy in this conversation. (Mandell Dep. 394:8-25, attached as Exhibit 6 to the Filosa Declaration).

38.     Admit for purposes of this motion.

39.     Admit for purposes of this motion, except state that the grievance decision was based on a finding that that "Administration properly terminated the grievant . . . for unsatisfactory work performance." The grievance decision then cites to Article 17.A.6 of the collective bargaining agreement between the DOE and the UFT which provides that:

> A regular substitute whose services must be terminated at any time before the last two weeks of the term by reason of appointment, or return from leave or other absence of a regular teacher, or by reason of contraction in the school organization shall be given ten (10) school days notice of the termination and the reason therefore. If such notice is not given, the community or assistant superintendent in charge of the school will provide the substitute with an opportunity to perform per diem service available in the district or in a high school for a number of days equal to the difference between ten (10) days and the actual number of days notice given.

(Filosa Decl., Ex. 13; Ex. 14, at p. 2). The underlined portion of the quotation to Article 17.A.6 was omitted from the grievance decision. (*See* Filosa Decl., Ex. 14, at p. 2). Because TSgt. Mahaffy's services were not terminated "by reason of appointment, or return from leave or other absence of a regular teacher, or by reason of contraction in the school organization," City Defendants were required to retain TSgt. Mahaffy for the remainder for the duration of the school year. (*See* Filosa Decl., Ex. 12).

40.     Admit for purposes of this motion, except state that TSgt. Mahaffy's employment was terminated effective May 23, 2008, while the unsatisfactory rating was not dated until June 26, 2008 – a date ten days after the date of the hearing regarding TSgt. Mahaffy's grievance of his termination. (See Filosa Decl., Ex. 47; Ex. 14).

41.    Admit for purposes of this motion, except state that the committee that reviewed

TSgt. Mahaffy's grievance of his unsatisfactory rating recommended that TSgt. Mahaffy's

"appeal be sustained and the rating of Unsatisfactory be reversed."  (See Filosa Decl., Ex. 15).

Specifically, the committee found that:

> The testimony of Principal Kirkweg was not convincing.  The Principal made
> accusations of impropriety but did not produce one single document to support
> them and basically based her assessment on hearsay from other staff members and
> students. . . .  The claim made by the Appellant and the UFT Advisor that the
> disciplinary actions began after the school had to be reprogrammed cannot be
> dismissed.  All the disciplinary actions seem to have begun shortly after the event
> with the student reprogramming.  The claim is given further credence by the fact
> that the Principal stated on the record that she expected the Appellant, as well as
> the other ROTC teachers, to work extra hours, evenings and weekends without
> pay after she could not pay them per session anymore.

(*Id.*).

## ADDITIONAL MATERIAL FACTS IN DISPUTE

In an attempt to clarify the true issues of material fact, Plaintiff provides the following

affirmative statements of fact underlying his allegations along with evidentiary support.

### Plaintiff's Twenty Year Career With The United States Air Force

42.    Plaintiff Robert Mahaffy is a retired Air Force Technical Sergeant who has served

with distinction in the Air Force for twenty years from 1983-2003.  (Mahaffy Dep. 11:1-5).

43.    During his twenty years of service, TSgt. Mahaffy was deployed throughout the

world and saw combat in the Middle East and Afghanistan.  (Mahaffy Dep. 11:6-14:5).

44.    Throughout the course of his service with the Air Force, TSgt. Mahaffy was a

highly dedicated noncommissioned officer, as evidenced by his last five performance reviews

which rated him as: "The exception.  Absolutely superior in all areas."  (Filosa Decl., Ex. 16).

45.    On TSgt. Mahaffy's 2002 Air Force Performance Report, the rater noted that

TSgt. Mahaffy "supervises and organizes workload and duty assignments for a six person

Operations Resources section" and "[c]onducts performance and career counseling and supervises the flight training program." (Filosa Decl., Ex. 16, at 1). Additionally, the rater noted that TSgt. Mahaffy was a "[s]uperior performer" and that "[u]nmatched ability and potential are cornerstones of his success – definitely promote." (*Id.* at 2).

46.     From 1986 through his retirement from the Air Force in 2003, TSgt. Mahaffy served as an instructor in Flight Operations Data Automation. (Mahaffy Dep. 20:2-12). As an instructor, TSgt. Mahaffy trained enlisted airmen that had recently graduated from technical school and were being indoctrinated into the unit. (*Id.* at 20:15-21:4). This training involved both classroom instruction and on the job training. (*Id.* at 20:25-21:4; Mahaffy Affidavit, ¶ 5).

47.     TSgt. Mahaffy retired from the Air Force in 2003 and accepted a position as a Crew Scheduler with JetBlue Airlines. (Mahaffy Dep. 14:6-14).

48.     After approximately two years in the position of Crew Scheduler with JetBlue Airlines, TSgt. Mahaffy was promoted to the position of Flight Data Analyst. (Mahaffy Dep. 15:19-16:4).

**Plaintiff's Application For Employment with Air Force Junior Reserve Officer Training Program and Bronx Aerospace**

49.     In or around the Fall of 2006, TSgt. Mahaffy, while still employed by JetBlue Airlines, learned of the Air Force Junior Reserve Officers Training Corps ("Air Force JROTC") program from a colleague and applied to become an instructor. (Mahaffy Dep. 16:16-17:4).

50.     In or around November 2006, TSgt. Mahaffy interviewed with Michael Hill, Capt., USAF (Ret.), who was the Senior Aerospace Science Instructor at Aviation High School, to become an Air Force JROTC Instructor. (Mahaffy Affidavit, ¶ 9; Filosa Decl Ex. 51). Following his interview, Capt. Hill noted the following:

(i) TSgt. Mahaffy "has a very sincere desire to get back in the teaching environment and work with young people. We had him spend some time with our cadets and he quickly developed a rapport. He was obviously quite comfortable with the teens that he had just met, and genuinely enjoyed spending time with them." (Filosa Decl., Ex. 51, at § 1.E);

(ii) TSgt. Mahaffy "has an average knowledge of Aerospace subjects, although he is probably above average in some areas of the LE courses. However, with his career field and extensive training time, he brings some valuable experience with him." (*Id.* at § 1.F);

(iii) TSgt. Mahaffy "was quite comfortable with our cadets. I think his time as a an Air Force instructor working with young airmen will serve him very well in the AFJROTC program." (*Id.* at § 1.M);

(iv) TSgt. Robert Mahaffy is the kind of dedicated, motivated NCO we want to attract to this program. . . . I feel that he brings a wealth of experience that will benefit the program. . . . If I had an opening here, I would definitely hire him. I highly recommend he be accepted into the program." (*Id.* at § 3).

51.    Following TSgt. Mahaffy's application to become an Air Force JROTC Instructor, the Air Force nominated him for an open position with Bronx Aerospace. (Kirkweg Dep. 94:22-95:4).

52.    In or around January 2007, Defendant Barbara Kirkweg interviewed TSgt. Mahaffy to be an Aerospace Science Instructor ("ASI") with the Air Force JROTC program at Bronx Aerospace. (Mahaffy Dep. 25:22-26:10; Kirwkeg Dep. 95:2-4). Defendant Kirkweg testified that she interviewed TSgt. Mahaffy on two occasions. (Kirkweg Dep. 98:22-24).

53.     Following her interviews with TSgt. Mahaffy, Ms. Kikweg felt that he was a good fit for the vacant ASI position at the School.  (Kirkweg Dep. 97:16-19).  Following his interview with Defendant Kirkweg, TSgt. Mahaffy was offered the open ASI position at Bronx Aerospace, starting in February 2007.  (Mahaffy Dep. 26:11-27:1).

54.     Prior to accepting the ASI position with Bronx Aerospace, TSgt. Mahaffy discussed the salary for the position.  Ms. Kirwkeg explained to TSgt. Mahaffy that Air Force JROTC instructors were paid approximately one-third more than the standard teacher's salary, but that an ASI's salary was based on the rank that such employee attained at the time that they retired from the Air Force.  (Mahaffy Dep. 28:13-29:23).

**Plaintiff's Employment With Bronx Aerospace**

55.     As an ASI, TSgt. Mahaffy was required to teach the Air Force JROTC curriculum to students assigned to the School.  In addition to these teaching duties, the duties of an ASI included coordinating extra-curricular activities (such as drill meets, field trips, and arranging visitors and speakers to come to the School), conducting inspections of the students to ensure compliance with the Air Force and the School's uniform requirements, as well as keeping inventory of the Air Force JROTC uniform items and equipment.  (Mahaffy Dep. 31:1-14; Mahaffy Affidavit ¶ 13).

56.     In or around March 2007, TSgt. Mahaffy was appointed to the position of Senior Aerospace Science Instructor ("SASI").  (Mahaffy Dep. 34:16-20; Kirkweg Dep. 226:9-25).

57.     As SASI, TSgt. Mahaffy was responsible for administering the entire Air Force JROTC program at the School and ensuring that the program was being run in compliance with Air Force regulations as well as supervising the four other ASIs employed by the School. (Mahaffy Dep. 34:1-7; 34:23-35:3).  The SASI's duties also included all those duties assigned to

ASIs, as well as additional supervisory duties. (Mahaffy Dep. 35:12-18). According to

Defendant Kirkweg, the SASI was also considered a department chairperson. (Kirkweg Dep.

37:20-38:6).

58.     As part of his appointment to the SASI position, TSgt. Mahaffy was entitled to

additional compensation for fulfilling the SASI position. Specifically, TSgt. Mahaffy was told

by Defendant Kirkweg that he would be approved for one hour of overtime (or per session pay)

per day for performing the duties of the SASI position. (Mahaffy Dep. 36:1-6; 37:3-14). This

additional overtime pay amounted to approximately $39 per hour. (Mahaffy Dep. 37:22-25).

59.     On August 25, 2007, Defendant Kirkweg sent TSgt. Mahaffy an email thanking

for "the outstanding manner" in which he worked with the students at Bronx Aerospace,

specifically stating, "I am very grateful for the time and extraordinary effort you have put into

making this our best bridge program ever. Our kids are Blessed to have you as our SASI."

(Filosa Decl., Ex. 17; Kirkweg Dep. 155:8-23).

60.     On September 11, 2007, Defendant Kirkweg emailed Jo Alice Talley of the Air

Force thanking Ms. Talley for nominating TSgt. Mahaffy to Bronx Aerospace earlier that year,

specifically stating, "I want to sincerely thank you for finding a great fit for our school in TSgt.

Mahaffy." (Filosa Decl., Ex. 18).

61.     On November 22, 2007 Defendant Kirkweg sent TSgt. Mahaffy an email

thanking him and the ASIs that he supervised for their work performance, specifically stating, in

relevant part: "I believe I owe you and your staff a special debt of gratitude. Thank you for the

many improvements you have made in our corps during the summer and fall semester. You are a

wonderful group; I know that. I am grateful for what you do for our kids. . ." (Filosa Decl., Ex.

19; Kirkweg Dep. 230:12-231:5).

62.     From September 2007 through February 2008, Defendant Kirkweg believed that TSgt. Mahaffy's performance was satisfactory.  (Filosa Decl., Ex. 11 at 20:22-24).

**June 2007 Termination of Employment of TSgt. Williams and MSgt. Picone**

63.     At the time that he began his employment with Bronx Aerospace, there were five ASIs assigned to the School: TSgt. Mahaffy, MSgt. Joseph Picone, TSgt. Bobby Williams, TSgt. Robert Sidberry and TSgt. William McCoy.  (Mahaffy Dep. 35:5-11).

64.     On or about April 16, 2007, MSgt. Joseph Picone signed a resignation letter indicating that he resigned him employment with the School effective June 28, 2007.  (Filosa Decl., Ex. 20).

65.     MSgt. Picone's resignation came at the request of Defendant Kirkweg after she determined that Bronx Aerospace was "no longer an appropriate fit" for MSgt. Picone, but offered to recommend his for future employment.  (Filosa Decl., Ex. 21).  Defendant Kirkweg testified that she requested MSgt. Picone's resignation because he had been unavailable to work after school and Saturdays during the 2006 – 2007 school year.  (*Id.*; Kirkweg Dep. 174:5-7; 176:19-177:17).

66.     Defendant Kirkweg testified that MSgt. Picone was not terminated and that "[t]ermination has different connotations than a resignation.  For instance, Sergeant Picone went to look for a position at another school in New York City, which would have been unlikely had he been terminated."  (Kirkweg Dep. 182:9-13).

67.     Defendant Kirkweg testified that she was not sure whether she would have terminated MSgt. Picone's employment with Bronx Aerospace had he refused to sign the resignation letter.  (Kirkweg Dep. 180:18-181:3).

68.     Defendant Kirkweg testified that she never told MSgt. Picone that she would terminate his employment if he refused to resign his employment with the School.  (Kirkweg Dep. 180:7-13).

69.     On or about April 16, 2007, TSgt. Bobby Williams signed a resignation letter indicating that he resigned his employment with the School effective June 28, 2007.  (Filosa Decl., Ex. 22).

70.     TSgt. William's resignation came at the request of Defendant Kirkweg after she determined that Bronx Aerospace was "no longer an appropriate fit" for TSgt. Williams, but offered to recommend him for future employment.  (Filosa Decl., Ex. 23).  Defendant Kirkweg testified that she requested TSgt. Williams' resignation because he had been unavailable to work after school and participate in weekend events during the 2006 – 2007 school year.  (*Id.*; Kirkweg Dep. 174:5-7; 176:19-177:17).

71.     Defendant Kirkweg testified that TSgt. Williams was not terminated and that "[t]ermination has different connotations than a resignation."  (Kirkweg Dep. 182:9-13).

72.     Defendant Kirkweg testified that she was not sure whether she would have terminated TSgt. Williams' employment with Bronx Aerospace had he refused to sign the resignation letter.  (Kirkweg Dep. 180:18-181:3).

73.     Defendant Kirkweg testified that she never told TSgt. Williams that she would terminate his employment if he refused to resign his employment with the School.  (Kirkweg Dep. 180:7-13).

74.     During the 2007 – 2008 school year, Defendant Kirkweg referred to MSgt. Picone and TSgt. Williams as having been "fired," which TSgt. Mahaffy took as a warning as to what would happen if he disagreed with Defendant Kirkweg's operation of the School.

**Plaintiff's Protected Labor Union Activity**

75.     On or about February 1, 2008, TSgt. Mahaffy met with Georgina Appiah, the School's UFT union representative and notified her that he was being assigned a schedule that exceeded the 6 hour 50 minute schedule provided for in the collective bargaining agreement between the DOE and the UFT.  (Mahaffy Affidavit ¶ 20; Mahaffy Dep. 135:19-137:1).

76.     Prior to his discussion with Ms. Appiah, TSgt. Mahaffy was, on average, assigned a work schedule of at least 9 hours per day.  (Mahaffy Affidavit ¶ 20; Filosa Decl. Ex. 24).

77.     Prior to his discussion with Ms. Appiah, TSgt. Mahaffy was unaware of whether the collective bargaining agreement's 6 hour and 50 minute schedule applied to him.  When he had previously discussed with Defendant Kirkweg whether he was a regular teacher or a provisional teacher, she had said that the collective bargaining agreement did not apply to him (or the other ASIs).  Thus, TSgt. Mahaffy did not believe that the collective bargaining agreement's 6 hour and 50 minute schedule applied to him.  (Mahaffy Affidavit ¶ 22).

78.     At the conclusion of their meeting, Ms. Appiah advised TSgt. Mahaffy that she would look into the matter and get back to him.  (Mahaffy Affidavit ¶ 23).

79.     After speaking with TSgt. Mahaffy, Ms. Appiah then spoke to Defendant Kirkweg and notified her that TSgt. Mahaffy and the other ASIs objected to their schedule and were going to notify the UFT regarding their objection.  Defendant Kirkweg testified that her discussion with Ms. Appiah constituted a grievance pursuant to the collective bargaining agreement. (Kirkweg Dep. 86:17-87:22).

80.     Defendant Kirkweg then received a call from Lynn Winderbaum at the Bronx UFT who told Defendant Kirkweg that she should change the JROTC instructor's schedules. (Kirkweg Dep. 87:23-88:14).

81.     Ms. Winderbaum notified Defendant Kirkweg that she should assign TSgt. Mahaffy and the other ASIs to the same hours as teachers because regular substitutes should be treated the same as teachers.  Defendant Kirkweg then instructed Assistant Principal Maryanne Mandell to change the TSgt. Mahaffy's and the other JROTC instructors' schedules to match those of regular teachers.  (Kirkweg Dep. 191:12-18; 203:9-19).

82.     Defendant Kirkweg did not agree with Ms. Winderbaum assertion that the JROTC instructors should be assigned the same hours as regular teachers because "they were paid 30 percent more.  They weren't required to have college degrees, and they weren't required to be certified."  (Kirkweg Dep. 191:23-192:5).

83.     Defendant Kirkweg testified that while she did not know who personally filed the grievance with the UFT over the JROTC instructor's schedules, she assumed that it was TSgt. Mahaffy.  (Kirkweg Dep. 93:11-16).  Defendant Kirkweg's assumption was based on the fact that "he was the – at the time, the senior aerospace science instructor, and the others were taking their lead from him."  (Kirkweg Dep. 93:17-20).

84.     Defendant Kirkweg testified that she changed TSgt. Mahaffy's and the other ASIs' schedules because "they objected to it, and I do not believe that people who are forced to work hours that they don't want to work are good for children" and further elaborated, "I believe that if people . . .  are forced to work hours that they are grieving, that they are in disagreement with, that it's not going to be good for children to be with those people during those times." (Kirkweg Dep. 88:16-19; 89:4-10) (attorney objection omitted).

85.     Defendant Kirkweg testified that she "did not want to place people with children who were not agreeable.  It was not a healthy situation. . . . [b]ecause children need people who

want to be with them. They don't need people who are being forced to be with them." (Kirkweg Dep. 201:12-19).

86.     Defendant Kirkweg also believed that the fact that TSgt. Mahaffy filed a grievance with the UFT was an indication that he was not interested in putting the children first. Defendant Kirkweg also believed that by filing the grievance related to his work schedule, TSgt. Mahaffy was stating that he only wanted to work 6 hours and 50 minutes per day. (Kirkweg Dep. 232:22-233:23).

87.     Defendant Kirkweg, however, applied a different set of standards to TSgt. Mahaffy and the other JROTC instructors because, according to her, they were paid 30 percent more than regular teachers and, as a result, she did not feel that TSgt. Mahaffy was putting the students first when he objected to working a schedule in excess of 6 hours and 50 minutes. (Kirkweg Dep. 235:5-16).

88.     Within a few days of speaking with his union representative, TSgt. Mahaffy's schedule was changed to a six hour and fifty minute workday and that the number of class periods that he was assigned to was reduced from approximately ten to five or six. (Mahaffy Dep. 137:11-24).

**Plaintiff Is Removed From The Senior Aerospace Science Instructor Position**

89.     Following the filing of the grievance and the change in his schedule, TSgt. Mahaffy was removed from the Senior Aerospace Science Instructor position. (Kirkweg Dep. 203:22-25).

90.     Prior to TSgt. Mahaffy's discussion with Ms. Appiah and the ensuing grievance, Defendant Kirkweg had not thought about removing TSgt. Mahaffy from the SASI position. (Kirkweg Dep. 205:9-16).

91.     As a result of TSgt. Mahaffy no longer serving in the position of SASI, he was no longer considered a department chair.  (Kirkweg Dep. 207:5-11).

92.     Following the removal of TSgt. Mahaffy's removal from the SASI position, Defendant Kirkweg notified the Air Force that TSgt. Mahaffy was no longer the SASI and she asked that the Air Force nominate someone to fill the position.  (Kirkweg Dep. 208:14-18).

93.     Specifically, Defendant Kirkweg wrote the following to Jo Alice Talley of the Air Force:

> I write to rescind my request for TSgt. Mahaffy to fill the SASI position on a temporary basis.  Acting in that capacity, TSgt. Mahaffy petitioned the teacher's union to change the sergeants' schedules at the beginning of this semester when each of them were assigned to work 7:00 a.m. to 4:00 p.m., citing that other teachers work a 6 hr, 50 min day.  Since we had to comply, they all have different schedules.  Consequently, he is unable to supervise the other sergeants.

(Filosa Decl., Ex. 25).

94.     Defendant Kirkweg does not dispute that, had TSgt. Mahaffy not complained about his work schedule, he would have continued to fill the Senior Aerospace Science Instructor position.  (Kirkweg Dep. 203:22-204:7; 205:9-16).

## As A Result Of Plaintiff's Grievance, Students' And Teachers' Schedules Were Changed

95.     Following TSgt. Mahaffy's grievance and Defendant Kirkweg's decision to change his and the other JROTC instructors' schedules, all of the teachers; schedules changed, because, according to Defendant Kirkweg, changing the JROTC instructors' schedules had a domino effect.  (Kirkweg Dep. 219:18-25).

96.     Defendant Kirkweg testified that, as a result of TSgt. Mahaffy's grievance, a number of changes were made to teachers' schedules, students' schedules and classroom schedules.  (Kirkweg Dep. 359:15-360:8).

97.     According to Defendant Kirkweg, the need to make these changes "[wreaked] havoc with the schedule" and "it was extremely difficult to straighten out the spring semester once that determination [to change the JROTC instructors' schedule] was made."  (Kirkweg Dep. 360:3-13).  As a result, "[c]lassrooms had to be changed and children had to be assigned to different places" and the subject that teachers were teaching at a particular time were changed.  (Kirkweg Dep. 360:14-361:12).

**The February 5, 2008 Unsatisfactory Lesson Observation Report**

98.     On or about February 5, 2008, TSgt. Mahaffy received an "Unsatisfactory" classroom observation from Assistant Principal Mary-Ann Mandell.  (Filosa Decl., Ex. 26).

99.     One of the reasons that TSgt. Mahaffy received an unsatisfactory rating for this classroom observation was because he did not present Ms. Mandell with a lesson plan at the outset of the class period and the lesson plan that he submitted at the end of the class period "did not address the first 45 minutes of the lesson."  (Mandell Dep. 167:9-19; 170:25-171:15).

100.    The reason that TSgt. Mahaffy did not have a lesson plan for this class period was because, only minutes before the class period was to start, he was instructed by Henry Rey, the School's flight instructor, to show a 30 minute video documenting the accomplishments of the Tuskegee Airmen in order to prepare the students for an upcoming visit to the School by one of the Tuskegee Airmen.  (Mahaffy Affidavit ¶ 25).

101.    This unsatisfactory lesson served as one of the bases for TSgt. Mahaffy's termination from his employment with the School.  (Kirkweg Dep. 320:5-22; 322:8-11).

**Letters Of Reprimand And Other Adverse Employment Actions Following Plaintiff's Protected Labor Union Activity**

102.     In addition to the unsatisfactory lesson report, Plaintiff received a series of letters to the file and complaints from various administrators, all of which served as the basis for his termination.  (Filosa Decl., Ex. 27).

103.     On February 9, 2008, Chandra Joseph, the School's Parent Coordinator, complained to Defendant Kirkweg about TSgt. Mahaffy's failure to address parents that were waiting to meet with Defendant Kirkweg; (Filosa Decl., Ex. 28).

104.     TSgt. Mahaffy was not provided with a copy of this February 9, 2008 complaint by Ms. Joseph.  (Mahaffy Affidavit, ¶ 34).

105.     Defendant Kirkweg did not discuss Ms. Joseph's complaint with TSgt. Mahaffy. (Kirkweg Dep. 416:22-417:21).

106.     Ms. Joseph's February 9, 2008 complaint is one of the documents cited in TSgt. Mahaffy's notice of termination.  (Filosa Decl., Ex. 27).

107.     On February 29, 2008, Ms. Joseph again complained to Defendant Kirkweg about TSgt. Mahaffy's failure to provide a uniform to Ms. Joseph to give to the parent of a new student; (Filosa Decl., Ex. 29).

108.     TSgt. Mahaffy was not provided with a copy of this February 29, 2008 complaint by Ms. Joseph.  (Mahaffy Affidavit, ¶ 34).

109.     Defendant Kirkweg did not discuss Ms. Joseph's complaint with TSgt. Mahaffy. (Kirkweg Dep. 423:10-424:7).

110.     Ms. Joseph's February 29, 2008 complaint is one of the documents cited in TSgt. Mahaffy's notice of termination.  (Kirkweg Dep. 422:8-12; Filosa Decl., Ex. 29).

111.     On March 2, 2008, Ms. Mandell sent an email to Defendant Kirkweg complaining about certain conduct by TSgt. Mahaffy which she believed was "unprofessional."  (Filosa Decl., Ex. 30).

112.     TSgt. Mahaffy was not provided with a copy of this March 2, 2008 complaint by Ms. Mandell prior to his termination.  (Mahaffy Affidavit, ¶ 34).

113.     Ms. Mandell's March 2, 2008 complaint is one of the documents cited in TSgt. Mahaffy's notice of termination.  (Filosa Decl., Ex. 27).

114.     On March 19, 2008, Ms. Mandell provided Defendant Kirkweg with a statement complaining about certain conduct by TSgt. Mahaffy which she believed was unprofessional. (Filosa Decl., Ex. 31).

115.     TSgt. Mahaffy was not provided with a copy of this March 19, 2008 complaint by Ms. Mandell prior to his termination.  (Mahaffy Affidavit, ¶ 34).

116.     Ms. Mandell's March 19, 2008 complaint is one of the documents cited in TSgt. Mahaffy's notice of termination.  (Filosa Decl., Ex. 27).

117.     On March 24, 2008, TSgt. Mahaffy received letter of reprimand regarding two instances of failing to report to his class on time, which also served as one of the bases for TSgt. Mahaffy's termination. (Filosa Decl. Ex. 32; Mandell Dep. 236:15-20).

118.     TSgt. Mahaffy submitted a rebuttal to this letter of reprimand explaining why he had failed to report to his class on time in each instance.  (Filosa Decl., Ex. 32 at 2).  TSgt. Mahaffy explained that he had attempted to obtain coverage for his class so that he could continue to meet with members of the Air Force that were visiting the School, but his email was unsuccessful.  (*Id.*).  Similarly, with respect to the second instance, TSgt. Mahaffy explained that

he was late for his class because he was conducting an intervisitation with another teacher and did not realize that it was a double period. (*Id.*).

119. After meeting with TSgt. Mahaffy prior to the letter of reprimand being written and reviewing TSgt. Mahaffy's rebuttal, Ms. Mandell still felt that it was necessary to issue this letter to the file. (Mandell Dep. 247:8-11).

120. On April 11, 2008, TSgt. Mahaffy received a letter of reprimand asserting that he used an incorrect code on grading sheets for students assigned to him during a particular marking period. (Filosa Decl., Ex. 33).

121. TSgt. Mahaffy submitted a rebuttal to this letter of reprimand explaining why he had incorrectly coded these students' grades and addressing his efforts to correct the error. (Filosa Decl., Ex. 33 at 3).

122. Notwithstanding TSgt. Mahaffy's explanation, the reprimand letter remained in his file and served as one of the bases for his termination. (Filosa Decl., Ex. 27).

123. On April 14, 2008, TSgt. Mahaffy received a letter of reprimand asserting that he failed to attend a professional development period; (Filosa Decl., Ex. 34).

124. TSgt. Mahaffy submitted a rebuttal to this letter of reprimand explaining that he was never told that this meeting was mandatory, but that in the past he had been told that he was no longer included in professional development activities. (Filosa Decl., Ex. 34).

125. Further, TSgt. Mahaffy received a separate letter of reprimand for failing to attend the same faculty conference that was referenced in another reprimand letter that he received on the same day. (Filosa Decl., Ex. 33).

126. Notwithstanding TSgt. Mahaffy's explanation, the reprimand letter remained in his file and served as one of the bases for his termination. (Filosa Decl., Ex. 27).

127.     On April 14, 2008, TSgt. Mahaffy received a third letter of reprimand explaining that he was being disciplined because he took a sick day and failed to attend a back-to-school night.  (Filosa Decl., Ex. 35).

128.     TSgt. Mahaffy submitted a rebuttal explaining that he initially requested a sick day to care for his wife and infant daughter who were ill.  TSgt. Mahaffy notified Ms. Mandell via email and also discussed this with her in a subsequent phone conversation where advised TSgt. Mahaffy that "it should be fine" if he brought a doctor's note.  (Mahaffy Affidavit, ¶ 32 Filosa Decl., Ex. 35).  Along with his rebuttal, TSgt. Mahaffy provided a copy of a doctor's note excusing TSgt. Mahaffy for the date in question.  (Mahaffy Affidavit, ¶ 32; Filosa Decl., Ex. 36; (Mandell Dep. 325:4-326:7).

129.     On or about April 30, 2008, TSgt. Mahaffy's classroom was formally observed by Assistant Principal Michelle Penn and his lesson was rated satisfactory.  (Filosa Decl., Ex. 37).

**The March 30, 2008 Letter To Parents**

130.     On or about March 30, 2008, a letter was sent to parents of students enrolled at Bronx Aerospace from a "large group of teachers at Bronx Aerospace" advising them of a number of concerns that they had regarding the "education and well being" of students assigned to the School that these teachers believed the parents had a right to know.  (Filosa Decl. 38).

131.     The letter addressed concerns regarding whether students, as opposed to JROTC instructors, were running the JROTC program and "have been given permission by the principal to circumvent the authority of the JROTC instructors, and select which of the other students may enter the program."  (Filosa Decl., Ex. 38).  The letter also advised parents that, "[a] previously united student body has now been divided into two separate entities meaning that there will be

two separate graduation ceremonies for the same graduating class" as a result of the "division of the JROTC program." (*Id.*).

132. The March 30, 2008 letter also advised parents that "numerous instructors are teaching classes outside of their license. To name a few examples: a social studies teacher doing hall duty, a gym teacher trying to teach social studies, a dean teaching gym, and last semester, a gym teacher teaching music." (*Id.*). The letter advised parents that as a result of this, "your child is not receiving proper instruction by a licensed certified teacher in the appropriate subject area. This is a violation of No Child Left Behind federal law and New York State education law." (*Id.*).

133. The March 30, 2008 letter also advised parents that "[s]chedules are changed with a great degree of frequency, 5 so far this year, causing confusion for the students. This has caused problems with grading procedure, and understandable frustration for students." (Filosa Decl., Ex. 38).

134. The March 30, 2008 letter closed by advising parents that these teachers were "truly concerned about our students, your children" and feared that "your children will not be given the opportunity to thrive academically and personally" and asked parents to reach out to the following individuals: (i) District Superintendent Elena Papaliberios, (ii) DOE Chancellor Joel Klein, and (iii) the Mayor's Office. (Filosa Decl., Ex. 38).

135. Shortly after the March 30, 2008 letter was sent to parents, TSgt. William McCoy was in Defendant Kirkweg's office when she showed him a copy of the letter and stated, in sum and substance, "I see the letter that your friend sent to the parents," which he believed to be a clear and obvious reference to TSgt. Mahaffy. (Filosa Decl., Ex. 8 at ¶ 4). TSgt. McCoy

testified in his affidavit that he has "no doubt that Principal Kirkweg was referring to TSgt. Mahaffy" when she made this statement.  (*Id.* at ¶ 5).

136.    Defendant Kirkweg testified that she believed that the Air Force JROTC instructors had been involved in drafting the March 30, 2008 letter because she "thought there was a [f]air amount of information about Junior ROTC, that only Junior ROTC people would have.  Not specifically him, but the other two and I'm not sure teachers would know the specifics that are contained in there."  (Kirkweg Dep. 439:3-10).

137.    Defendant Kirkweg also testified that, based on the content of the March 30, 2008 letter, the drafters of the March 30, 2008 letter "had input from Air Force people."  (Kirkweg Dep. 452:14-17).

138.    Defendant Kirkweg testified that her initial reaction upon reading the letter was one of shock, explaining that, "I think it's not something that I consider normal fair for teachers, staff members, to do."  (Kirkweg Dep. 437:25-438:9).

139.    Defendant Kirkweg further elaborated, explaining, "it's a letter that's extremely derogatory in nature and asks people to write to he mayor.  I mean this is not something that usually happens in high schools, as far as I know."  (Kirkweg Dep. 438:11-15).

140.    Defendant Kirkweg also testified that she believed that this was something that should have been addressed with her or the administration rather than directly with parents, and that if it was addressed with the parents, it should be done through the DOE.  (Kirkweg Dep. 441:16-443:3).

**Parents' Response to the March 30, 2008 Letter**

141.    On or about April 8, 2008, a parent of a student at Bronx Aerospace attempted to contact Superintendent Papaliberios because the parent was "upset because her daughter's

program was changed to the afternoon session (reason given is uniform issues). Parent was not informed that her daughter's program was going to be changed and she doesn't approve. She called to speak to Ms. Papaliberios regarding this matter because she doesn't want her daughter traveling at night." (Filosa Decl., Ex. 39).

142.    On April 9, 2008, the District Family Advocate for Bronx Aerospace reported that he had received a number of "calls and complaints as well as walk in parents concerning the policy change at [Bronx Aerospace]." The District Family Advocate reported that as of April 9, 2008, there had been (i) 9 reports made to 311, (ii) 22 phone calls to his office, (iii) 8 parent walk-ins to the District 11 office, (iv) 2 walk-ins to the Zerega office, (v) and 1 walk-in to the Fordham Plaza office. The District Family Advocate also noted that "[a]ll parents who have called have stated they attempted to speak with Defendant Kirkweg about this at the Parent Teacher conferences [on] 4/3-4/4 but she refused to meet with them." (Filosa Decl., Ex. 40).

143.    On April 11, 2008, a parent of a student at Bronx Aerospace filed a complaint with the District Family Advocate for Bronx Aerospace regarding schedule changes at the School. (Filosa Decl., Ex. 41).

144.    On April 28, 2008, a parent of a student at Bronx Aerospace emailed Superintendent Papaliberios to address concerns the School that referenced a number of the concerns outlined in the March 30, 2008 letter. (Filosa Decl., Ex. 42).

        a.  Specifically, this parent was concerned that their son "was part of the JROTC program offered at Bronx Aerospace up until last month. With no explanation as to why, my son was dropped from the program and his schedule has been changed three times within the last two months. . . [N]ow his schedule begins at 11am and ends after 5pm." (*Id.* at 2).

26

b. This parent also raised concerns which directly quoted the language from the March 30, 2008 letter. Specifically, this parent raised concerns about the "fact that there are teachers that are teaching classes that are outside of their licenses, like a gym teacher teaching social studies and/or music. If this is true, this is a violation of the No Child Left Behind federal law and New York State education law. This also means that my child is not receiving the proper instruction by a licensed certified teacher in the appropriate subject area." (*Id.* at 2).

c. This parent advised Superintendent Papaliberios that their son "has been disillusioned by this whole ordeal and does not want to continue attending this school." (*Id.* at 2).

145. On May 8, 2008, Superintendent Papaliberios was notified that a parent had contacted the District Family Advocate for Bronx Aerospace to advise them that there was going to be a press conference in front of the School to protest "what parents and students feel has been unfair treatment from the Principal and some staff members at the school," as well as the School's uniform policy, program changes and lack of communication with parents. This parent also indicated that television stations had been contacted and they expect News1 NY to be present as well." (Filosa Decl., Ex. 43).

**Termination of Plaintiff's Employment With the Department of Education**

146. On or about May 9, 2008, TSgt. Mahaffy was notified that his employment was being terminated effective May 23, 2008. (Mahaffy Affidavit, ¶ 33).

147. On that date, Assistant Principal MaryAnne Mandell presented TSgt. Mahaffy with a letter dated, May 3, 2008 ("Notice of Termination"), which stated, "[t]he causes for

termination action are: While serving as a substitute teacher during the fall and spring of the 2007-2008 school years, you received three letters to the file, two written complaints regarding unprofessional behavior by your department chair, two written complaints from our Parent Coordinator, and one unsatisfactory lesson observation. All documents are attached." (Filosa Decl., Ex. 27; Mahaffy Affidavit, ¶ 34).

148.    TSgt. Mahaffy was not provided with the opportunity to submit his resignation in lieu of termination. (Mahaffy Affidavit, ¶ 35).

149.    The Termination Notice did not attach the two written complaints from the School's Parent Coordinator. (Mahaffy Affidavit, ¶ 34).

150.    Greg Winn, Deputy Director of the United States Air Force Junior Reserve Officer Training Corps, testified that he met with Defendant Kirkweg following Plaintiff's complaint to the UFT and in that meeting, Defendant Kirkweg "stated, in sum and substance, that because TSgt. Mahaffy went to the labor union to question the schedule that Principal Kirkweg assigned to him, TSgt. Mahaffy 'did not have the level of dedication that she wanted' and she 'was going to get rid of him, one way or another.'" (Affidavit of Greg Winn, attached to the Filosa Declaration as Exhibit 9, ¶¶ 4, 6-7).

151.    When Mr. Winn expressed his concern that Defendant Kirkweg's actions seemed retaliatory, Defendant Kirkweg responded, in sum and substance, "Yes it is; I understand that and I'm going to do it." (Winn Affidavit, ¶ 9).

152.    Similarly, MaryAnne Mandell, Assistant Principal of Bronx Aerospace, testified that, as a result of the grievance filed by TSgt. Mahaffy, she no longer believed that TSgt. Mahaffy was committed to teaching at the School (Mandell Dep. 123:18-125:10) and that, if she

was principal of the School, this would have been a factor in the decision to terminate TSgt. Mahaffy's employment with the School (Mandell Dep. 335:9-336:10).

153.     The same day that he was notified of his termination, TSgt. Mahaffy notified TSgt. Sidberry and TSgt. McCoy that his employment with Bronx Aerospace was being terminated.  (Mahaffy Affidavit, ¶ 36).

154.     Effective Tuesday, May 13, 2008, TSgt. Mahaffy's classes were reassigned and he was assigned to the hallway duty.  (Filosa Decl., Ex. 44).

155.     By Tuesday, May 13, 2008, students at the School had learned that TSgt. Mahaffy's employment was being terminated as multiple students acknowledged that they had heard that he was being terminated and offered their condolences.  (Mahaffy Affidavit, ¶ 38).

**The New York Daily News Article**

156.     On May 14, 2008, the New York Daily News published an article entitled "Air Force May Ground B[ron]x H[igh] S[chool]" ("Daily News Article").  (Filosa Decl., Ex. 45).

157.     The Daily News Article referenced the Air Force's recent decision to place the School's ROTC program on probation.  (*Id.*).

158.     The Daily News Article stated that the School "could lose its Air Force funding because of rule violations and $66,800 in unaccounted money."  (*Id.*).

159.     The Daily News Article contained the following quote: "Kirkweg said the Air Force probation came on the word of a retired Air Force sergeant who she is firing from the ROTC program.  That sergeant, she said, was one of the people in charge of the ROTC account where funds were in question."  (*Id.*).

160.     The Daily News Article quoted Defendant Kirkweg as stating, "The school had no access to any of those funds."  (*Id.*).

161.    The Daily News Article referenced complaints that had been filed against the

School, "including 29 filed by parents with the city and scores of grievances from the teachers

union," which concerned issues such as "student cadets being given power to promote and

demote their peers; one allegedly promoted his girlfriend," "frequent sudden changes to class

schedules and harsh discipline like the removal of dozens of students from the ROTC program."

(*Id.*).

**Termination Grievance**

162.    On or about May 15, 2008, TSgt. Mahaffy filed a grievance asserting that his

termination violated the collective bargaining agreement between the DOE and the UFT.  (Filosa

Decl., Ex. 46).

163.    On or about June 16, 2008, a hearing was held regarding TSgt. Mahaffy's

grievance regarding his termination.  (Filosa Decl., Ex. 14).

164.    On or about July 1, 2008, a decision was rendered regarding TSgt. Mahaffy's

termination grievance.  (Filosa Decl, Ex. 14).

165.    Marcel Kshensky, the representative for Chancellor Joel Klein, denied TSgt.

Mahaffy's grievance, finding that the "Administration properly terminated the grievant, a regular

substitute teacher, effective May 23, 2008 for unsatisfactory work performance."  (Filosa Decl.,

Ex. 14 at 2).

166.    The grievance decision then cites to Article 17.A.6 of the collective bargaining

agreement between the DOE and the UFT which provides that:

> A regular substitute whose services must be terminated at any time before the last
> two weeks of the term <u>by reason of appointment, or return from leave or other
> absence of a regular teacher, or by reason of contraction in the school
> organization</u> shall be given ten (10) school days notice of the termination and the
> reason therefore. If such notice is not given, the community or assistant
> superintendent in charge of the school will provide the substitute with an

opportunity to perform per diem service available in the district or in a high school for a number of days equal to the difference between ten (10) days and the actual number of days notice given.

(Filosa Decl., Ex. 13; Ex. 14, at p. 2).

167. The grievance decision was "so ordered" by Chancellor Joel Klein or someone acting on his behalf and with his authority. (*Id.*; Papaliberios Dep. 145:9-24).

**Unsatisfactory Performance Rating**

168. On June 26, 2008, twelve days after the hearing regarding TSgt. Mahaffy's termination grievance, Defendant Kirkweg filled out a performance rating for TSgt. Mahaffy for calendar year 2007 – 2008 and rated TSgt. Mahaffy overall unsatisfactory. (Filosa Decl., Ex. 47).

169. As a result of this unsatisfactory rating, TSgt. Mahaffy is unable to apply for any JROTC positions with any DOE schools. (Mahaffy Dep. 298:14-299:25).

170. Following the receipt of his unsatisfactory rating, TSgt. Mahaffy appealed his unsatisfactory rating and a hearing was held on November 20, 2008. (Filosa Decl., Ex. 11).

171. At this hearing, Defendant Kirkweg testified that TSgt. Mahaffy's performance was unsatisfactory because "he was someone who demonstrated character and a work ethic that was not consistent with our school." (Filosa Decl., Ex. 11 at 8).

172. Defendant Kirkweg also testified that TSgt. Mahaffy "did not want to spend evenings or weekends with the children. Moreover, . . . when we had a budget cut last year, he went to the UFT to complain that I had tried to make them work eight hours a day, when I clearly told him when he came here that that is what is expected of Air Force or any junior ROTC instructors because it is not a regents based function and their value to the school is all about after school and weekends." (*Id.* at 8-9).

173.     At this hearing, Defendant Kirkweg testified that the satisfactory observation report by Assistant Principal Michelle Penn was not a part of his file because it was not submitted to her.  (*Id.* at 12-16).

174.     At her deposition, Ms. Mandell testified that Defendant Kirkweg told her that Ms. Penn would be assisting her in supervising the JROTC instructors, which included conducting classroom observations.  (Mandell Dep. 178:5-179:13).

175.     Shortly after this hearing where Defendant Kirkweg first learned that Ms. Penn had given TSgt. Mahaffy a satisfactory lesson observation, Defendant Kirkweg placed a letter in Ms. Penn's permanent file advising her that Defendant Kirkweg disagreed with her rating of TSgt. Mahaffy's classroom observation as satisfactory.  (Filosa Decl., Ex. 48; Kirkweg Dep. 341:24-342:8).

176.     On or about December 12, 2008, the chairperson of the committee that heard the appeal of TSgt. Mahaffy's unsatisfactory rating recommended that his appeal be sustained. [Filosa Decl., Ex. 49).

177.     The committee that heard TSgt. Mahaffy's appeal of his unsatisfactory rating issued the following findings:

    a.   "The testimony of Principal Kirkweg was not convincing."

    b.   "The Principal made accusations of impropriety but did not produce one single document to support them and basically based her assessment on hearsay from other staff members and students."

    c.   "The documentation from the Administration that was submitted for the hearing such as letters to file from Assistant Principal Mandell for missing one

faculty meeting and his failure to report to a class once do not warrant an unsatisfactory rating."

d. "The Principal's claim that the student's GPA suffered as a result of the use of the Code 11 by [TSgt. Mahaffy] is disingenuous. The school's programmer has the capacity to correct the error in a very short amount of time sparing the drop of the students' GPA."

e. "The Principal even contested and denied that a satisfactory observation report conducted by Michelle Penn, another Assistant Principal in her school, was part of Appellant's file."

f. "The claim made by [TSgt. Mahaffy] and the UFT Advisor that the disciplinary actions began after the school had to be reprogrammed cannot be dismissed. All the disciplinary actions seem to have begun shortly after the event with the student reprogramming. The claim is given further credence by the fact that the Principal stated on the record that she expected [TSgt. Mahaffy], as well as the other ROTC teachers, to work extra hours, evenings and weekends without pay after she could not pay them per-session anymore."

(Filosa Decl., Ex. 15, at 1).

178.    As a result of the findings outlined above, the committee recommended that TSgt. Mahaffy's appeal "be sustained and the rating of Unsatisfactory be reversed." (*Id.* at 1).

179.    Despite the committee's recommendation that TSgt. Mahaffy's appeal of his unsatisfactory rating be sustained, TSgt. Mahaffy's appeal was denied by Santiago Tavares, Interim-Acting Deputy Chancellor, as designee for Chancellor Klein. (Filosa Decl., Ex. 50).

180. The letter advised TSgt. Mahaffy that his appeal was denied and the rating was sustained "as a consequence of a poor professional attitude, poor delivery of instruction, and failure to support school activities." (*Id.*).

Dated: September 24, 2010
       New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____
       Scott B. Gilly
       Gregory N. Filosa

85 Fifth Avenue, Fifth Floor
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Counsel for Plaintiff Robert Mahaffy*