UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
ROBERT A. MAHAFFY,                                                 :
                                                                   :
                Plaintiff,                                :
                                                                   :
            v.                                                 : Case No. 09 Civ. 1593 (AKH)
                                                                   :
THE CITY OF NEW YORK; THE NEW YORK                                 :
CITY DEPARTMENT OF EDUCATION; BRONX                                :
AEROSPACE ACADEMY HIGH SCHOOL; and                                 :
BARBARA KIRKWEG, in her official and individual                    :
capacities,                                                        :
                                                                   :
                Defendants.                               :
------------------------------------------------------------------ x

**PLAINTIFF'S RULE 56.1 COUNTER-STATEMENT OF MATERIAL
FACTS IN DISPUTE IN RESPONSE TO DEFENDANT KIRKWEG'S MOTION
FOR SUMMARY JUDGMENT**

      Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and in response to the Defendant Kirkweg's Local Rule 56.1 Statement of Undisputed Material Facts annexed to the Motion for Summary Judgment by Defendant Barbara Kirkweg ("Defendant"), Plaintiff Robert Mahaffy ("Plaintiff" or "TSgt. Mahaffy"), by his attorneys, Thompson Wigdor & Gilly LLP, respectfully submits the following statement of material facts in dispute, which demonstrates that there are genuine issues of material facts to be tried which preclude summary judgment:

**OBJECTIONS TO CITY DEFENDANTS' RULE 56.1 STATEMENT**

      Plaintiff objects to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts to the extent that Defendant fails to support each statement of material fact with a citation to admissible evidence. Defendant repeatedly fails to provide a proper citation to the evidence that she relies on to support each statement. For example, Defendant's Local Rule 56.1 Statement

references a "Kirkwood Exhibit" (*see* ¶¶ 5 and 8) yet there is no declaration or affidavit from anyone by that name annexed to Defendant's motion. Defendant's failure to provide proper citations to admissible evidence in support of each Local Rule 56.1 statement is entirely contrary to the purpose of a Local Rule 56.1 Statement, which is to identify material facts, supported by evidence, to which there is no genuine issue to be tried. Defendant's failure to comply with this most basic requirement renders Plaintiff unable to reliably respond to each statement of material fact for which Defendant contends there is no genuine issue to be tried.

**PLAINTIFF'S COUNTER-STATEMENTS TO DEFENDANT KIRKWEG'S
LOCAL RULE 56.1 STATEMENTS OF UNDISPUTED FACTS**

1. Admit for purposes of this motion.

2. Controverted. Plaintiff's Complaint references defamatory statements made by Defendant, and published by the New York Daily News ("Daily News"), at paragraphs 53 through 55 and 96 through 110.

3. Admit for purposes of this motion.

4. Admit for purposes of this motion, except state that Plaintiff's Complaint also identifies this quotation from the article published by the Daily News ("Daily News Article") as defamatory. (Filosa Decl., Ex. 45 at ¶ 53).

5. Admit for purposes of this motion that paragraph 5 accurately cites to paragraph 53 of Defendant's Answer, however, Defendant Kirkweg has failed to provide a citation to the portion of Defendant's deposition testimony and instead generally refers to the entire excerpted portion of Defendant's deposition testimony which is attached to the Declaration of Walter A. Kretz, Jr. ("Kretz Declaration") as Exhibit B. Thus, Plaintiff is unable to reliably respond to this purported statement of undisputed fact.

6. Admit for purposes of this motion.

7. Controverted. Contrary to the express requirement of Local Rule 56.1, Defendant fails to provide a citation to any evidence which would support this statement. Further, this statement is not a statement of material fact which Defendant contends there is no genuine issue to be tried; instead, this statement constitutes legal argument which is more properly presented in Defendant's memorandum of law in support of her motion for summary judgment.

8. Admit for purposes of this motion that paragraph 8 accurately cites to paragraph 96 of Defendant's Answer, however, Defendant has failed to provide a citation to the portion of Defendant's deposition testimony and instead generally refers to the entire excerpted portion of Defendant's deposition testimony which is attached to the Declaration of Walter A. Kretz, Jr. as Exhibit B. Thus, Plaintiff is unable to reliably respond to this purported statement of undisputed fact. To the extent that Defendant asserts that she did not say "that the AFJROTC probation was due to plaintiff's conduct," this statement is controverted. At her deposition, when Defendant was asked whether she told the Daily News reporter that "the probation came on the word[] of an Air Force sergeant that [she] was firing from the ROTC program," she responded, "I could have. I don't remember specifically." Thus, the cited portion of Defendant's deposition testimony does not support the statement of material fact asserted in paragraph 8.

9. Controverted. Defendant references an "allegedly defamatory portion of the Daily New Article" that she then argues that Plaintiff admitted to in his deposition, yet fails to identify "allegedly defamatory portion" of the article in question. In light of this failure to identify a specific portion of the New York Daily News article, Plaintiff is unable to reliably respond to this purported statement of material fact to which Defendant contends there is no genuine issue to be tried. To the extent that Defendant Kirkweg asserts that the portion of Plaintiff's testimony constitutes an admission that "the Air Force probation came on the word of

3

a retired Air Force sergeant that she is firing from the ROTC program," Plaintiff's testimony does not support such a conclusion as Plaintiff was asked whether he spoke to the Air Force about what he believed to be problems at the School, to which he replied in the affirmative. Plaintiff has no personal knowledge of what the Air Force's decision to place the School on probation was based on. Plaintiff admits that the cited portion of his deposition testimony constitutes an admission that, as of the date of the New York Daily News article, he had received notice that Defendant Kirkweg was terminating his employment with the School. Plaintiff admits that the cited portion of his deposition testimony constitutes an admission that, for a period of time, he was one of the people with access to the bank account for the JROTC program. All other assertions not specifically admitted in this paragraph 9 are controverted.

10. Admitted for purposes of this motion that the New York Daily News article reported that the Air Force had placed the School on probation. Controverted to the extent that this paragraph asserts that the Air Force probation was the only fact reported in the New York Daily News Article as there were a number of other facts reported in this article other than the fact that the Air Force had placed the School on probation.

11. Controverted. Contrary to the express requirement of Local Rule 56.1, Defendant Kirkweg fails to provide a citation to any evidence which would support this statement as this paragraph cites to Exhibit C to the Kretz Declaration which consists of excerpts of Plaintiff's deposition. To the extent that Defendant Kirkweg intended to cite to her own deposition, which is attached to the Kretz Declaration as Exhibit B, it is admitted for purposes of this motion that Defendant Kirkweg did not initiate contact with the reporter from the New York Daily News.

4

## ADDITIONAL MATERIAL FACTS IN DISPUTE

In an attempt to clarify the true issues of material fact, Plaintiff provides the following affirmative statements of fact underlying his allegations along with evidentiary support.

**The Air Force Places the School's JROTC Program on Probation**

12. On April 10, 2008, the Air Force notified Superintendent Elena Papaliberios that it was placing the School's Air Force JROTC program was being placed on probation. (Filosa Decl., Ex. 53).

13. The letter from the Air Force followed a visit by representatives of the Air Force, the stated purpose of which was "to reevaluate funding and contract discrepancies outlined in two previous unit assessment evaluations conducted 20 Dec 06 and 20 Mar 07." (Filosa Decl., Ex. 53 at 1).

14. Over the years, the Air Force had raised a number of concerns with Defendant Kirkweg regarding the School's JROTC program as well as the funds that the Air Force had provided to the School. (Affidavit of Greg Winn, attached as Exhibit 9 to the Filosa Declaration, ¶ 3; Filosa Decl., Ex. 54).

15. Specifically, the Air Force had raised concerns about Air Force JROTC instructors being assigned to perform duties that were inconsistent with the contract between the DOE and the Air Force, including JROTC instructors being assigned to teach classes in disciplines outside the Air Force JROTC program, as well concerns that the School, under the direction of Defendant Kirkweg, was using Air Force funds for unauthorized purposes and had not properly accounted for all of the funds that the Air Force provided to the School for the JROTC program. (Winn Affidavit, ¶ 3)

5

16. As result of what the Air Force noted as "a lack of response or resolution to these discrepancies," the Air Force expressed concern "about the effective accomplishment of AFJROTC objectives" at the School. (Filosa Decl., Ex. 54 at 1).

17. The April 10, 2008 letter then went on to reference the following specific concerns regarding the reconciliation of Air Force funds provided to the School, as well as concerns regarding (i) JROTC instructors being assigned duties or teaching disciplines outside of the JROTC program, (ii) the mandatory enrollment of all Bronx Aerospace students in the JROTC program, which was required to be voluntary, (iii) insufficient classroom, storage and office space, (iv) the unusually high turnover rate of instructors at Bronx Aerospace. (*Id.* at 1-2).

18. With respect to the funds provided by the Air Force for the operation of the JROTC program, the Air Force noted that there was $66,800 in funds that had been provided to the School that had not been accounted for with appropriate receipts and other documentation. (*Id.* at 1).

19. When TSgt. Mahaffy was employed by the School, he kept detailed and accurate records accounting for any expenditures related to the JROTC account. (Mahaffy Affidavit, ¶ 41).

20. As a result of the above outlined concerns, the Air Force decided to place the School on a one-year probation, effective immediately. (*Id.* at 2).

21. Defendant Kirkweg testified that she believed that the decision the Air Force decision to place the School's JROTC program on probation "came on the word of" TSgt. Mahaffy. (Kirkweg Dep. 472:8-11).

22. Defendant Kirkweg testified that her belief was based on the fact that TSgt. Mahaffy and the other JROTC instructors met with the representatives of the Air Force prior to the Air Force placing the School on probation. (Kirkweg Dep. 472:12-19).

23. When the Air Force representatives visited the School, they met privately with Defendant Kirkweg to discuss the Air Force's "concerns related to the School's use of Air Force JROTC instructors and the current status of funds that the Air Force had provided to the School for the operation of the JROTC program." (Winn Affidavit, ¶ 4).

**The New York Daily News Article**

24. On May 14, 2008, the New York Daily News ("Daily News") published an article entitled "Air Force May Ground B[ron]x H[igh] S[chool]" ("Daily News Article"). (Filosa Decl., Ex. 45).

25. The Daily News Article referenced the Air Force's recent decision to place the School's JROTC program on probation. (*Id.*).

26. The Daily News Article stated that the School "could lose its Air Force funding because of rule violations and $66,800 in unaccounted money." (*Id.*).

27. The Daily News Article contained the following quote: "Kirkweg said the Air Force probation came on the word of a retired Air Force sergeant who she is firing from the ROTC program. That sergeant, she said, was one of the people in charge of the ROTC account where funds were in question." (*Id.*).

28. The Daily News Article quoted Ms. Kirkweg as stating, "The school had no access to any of those funds." (*Id.*).

29. The Daily News Article referenced complaints that had been filed against the School, "including 29 filed by parents with the city and scores of grievances from the teachers

7

union," which concerned issues such as "student cadets being given power to promote and demote their peers; one allegedly promoted his girlfriend," "frequent sudden changes to class schedules and harsh discipline like the removal of dozens of students from the ROTC program." (*Id.*).

30. On May 13, 2008, the day before the article was published, Ms. Kirkweg spoke to the reporter from the Daily News about the article. (Kirkweg Dep. 458:25-459:7).

31. On May 12, 2008, Ms. Kirkweg spoke with Marge Feinberg of the DOE's press office regarding topics that Ms. Kirkweg wanted to address with the reporter from the Daily News. (Filosa Decl., Ex. 55; Kirkweg Dep. 461:5-18).

32. Following Ms. Kirkweg's conversation with Ms. Feinberg, she emailed Ms. Feinberg to get her approval regarding four points that Ms. Kirkweg wanted to share with the reporter from the Daily News, which included, among others, that "Only Air Force sergeants had access to the funds during the time period in question. Therefore, any discrepancy must be answered by Air Force personnel." (Filosa Decl., Ex. 55).

33. Ms. Kirkweg testified that when she said that "any discrepancy must be answered by Air Force personnel," she was "saying that I had no opportunity to misuse or misaccount for $66,800 because I did not have access to the funds, which is what I stated to the reporter." (Kirkweg Dep. 462:15-163:2).

34. With respect to the portion of the article that stated, "Kirkweg said that the Air Force probation came on the word of a retired Air Force sergeant who she is firing from the ROTC program. That sergeant, she said, was one of the people in charge of the ROTC account where funds were in question," Ms. Kirkweg testified she "could have" told the reporter, but she did not specifically remember. (Kirkweg Dep. 464:18-23).

**Termination of Plaintiff's Employment With the Department of Education**

35. On or about May 9, 2008, TSgt. Mahaffy was notified that his employment was being terminated effective May 23, 2008. (Mahaffy Affidavit, ¶ 33).

36. On that date, Assistant Principal MaryAnne Mandell presented TSgt. Mahaffy with a letter dated, May 3, 2008 ("Notice of Termination"), which stated, "[t]he causes for termination action are: While serving as a substitute teacher during the fall and spring of the 2007-2008 school years, you received three letters to the file, two written complaints regarding unprofessional behavior by your department chair, two written complaints from our Parent Coordinator, and one unsatisfactory lesson observation. All documents are attached." (Filosa Decl., Ex. 27; Mahaffy Affidavit, ¶ 34).

37. The same day that he was notified of his termination, TSgt. Mahaffy notified TSgt. Sidberry and TSgt. McCoy that his employment with Bronx Aerospace was being terminated. (Mahaffy Affidavit, ¶ 36).

38. Effective Tuesday, May 13, 2008, TSgt. Mahaffy's classes were reassigned and he was assigned to the hallway duty. (Filosa Decl., Ex. 56).

39. By Tuesday, May 13, 2008, students at the School had learned that TSgt. Mahaffy's employment was being terminated as multiple students acknowledged that they had heard that he was being terminated and offered their condolences. (Mahaffy Affidavit, ¶ 38).

40. At the time that the article was published, it was common knowledge among the staff and students of the School that TSgt. Mahaffy's employment was being terminated, especially because TSgt. McCoy and TSgt. continued to teach classes while TSgt. Mahaffy was assigned to hallway duty. (Mahaffy Affidavit, ¶ 37-38).

41. Following the Daily News Article, TSgt. Mahaffy was approached by numerous students that he had taught prior to his assignment to hallway duty who told him, in sum and substance, "Don't worry, we know you didn't take the money." (Mahaffy Affidavit, ¶ 46).

**Investigation by Special Commissioner of Investigation for the New York City School District**

42. In January 2009, the Special Commissioner of Investigation for the New York City School District ("SCI") began an investigation into concerns regarding various bank accounts assigned to Bronx Aerospace, including, among others, the bank account related to the Air Force ROTC program. (Filosa Decl., Ex. 52 at 1).

43. The SCI investigation concluded that Ms. Kirkweg "failed to follow standard operating procedures with respect to the school's finances." (*Id.*).

**Specific Expenditures from the Air Force Account**

44. During the spring semester of 2007, Ms. Kirkweg instructed TSgt. Mahaffy and TSgt. Sidberry to open a separate bank account for Air Force JROTC funds. (Mahaffy Dep. 93:18-21).

45. TSgt. Mahaffy and TSgt. Sidberry were had signatory authority for the JROTC account. (Mahaffy Dep. 93:13-17).

46. Notwithstanding her lack of signatory authority, on more than one occasion, Ms. Kirkweg instructed TSgt. Mahaffy to make specific expenditures from the JROTC bank account. (Mahaffy Affidavit, ¶ 42 Mahaffy Dep. 78:12-23; 105:24-106:12; 117:4-118:23).

47. Specifically, Defendant Kirkweg instructed TSgt. Mahaffy to loan $2,000 to the School's gym teacher in order to cover a payroll error. (Mahaffy Affidavit, ¶ 43; Mahaffy Dep. 78:18-23).

48. Additionally, Defendant Kirkweg instructed TSgt. Mahaffy to loan $3,000 to one of the other JROTC instructors who was experiencing financial hardships. (Mahaffy Affidavit, ¶ 44; Mahaffy Dep. 118:18-23).

49. Additionally, Defendant Kirkweg instructed TSgt. Mahaffy to pay more than $5,500 for the School's JROTC awards banquet (which was not an approved expense per the Air Force policy on expenditures) which Defendant Kirkweg said was reimbursement for transportation expenses that Defendant Kirkweg claimed that the School had incurred on the JROTC's behalf during the prior school year. (Mahaffy Affidavit, ¶ 45; Mahaffy Dep. 105:24-106:12).

50. Defendant Kirkweg denies that she ever instructed TSgt. Mahaffy to make any payments from the JROTC account, stating, "I did not instruct him to use ROTC funds for any particular purpose, no, I did not." (Kirkweg Dep. 496:6-11).

51. With respect to loans made to other teachers, Defendant Kirkweg denied instructing TSgt. to make any such loan, stating, "I could not instruct Sergeant Mahaffy to do anything with the money [from the JROTC account]." (Kirkweg Dep. 498:25:499:6).

52. Defendant Kirkweg admits, however, that she asked TSgt. Mahaffy to use JROTC funds to pay for an end of year awards banquet, but denies having "instructed" Plaintiff to do so, stating that, "I could not instruct them to do anything with the [JROTC] funds." (Kirkweg Dep. 498:2-7).

Dated: September 24, 2010
New York, New York

Respectfully submitted,

THOMPSON WIGDOR & GILLY LLP

By: _____/s/_____
Scott B. Gilly
Gregory N. Filosa

85 Fifth Avenue, Fifth Floor
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

*Counsel for Plaintiff Robert Mahaffy*